UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MALIBU TEXTILES, INC.,** | : | |
| | : | **Docket No. 07-cv-4780 (SAS)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CAROL ANDERSON, INC. and CABI, LLC,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

## PLAINTIFF MALIBU TEXTILES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY FOR COPYRIGHT INFRINGEMENT

---

COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP

Nancy E. Wolff
Matthew A. Kaplan
41 Madison Avenue, 34th Floor
New York, New York 10010
(212) 974-7474

*Attorneys for Plaintiff Malibu Textiles, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

   I.  MALIBU'S COPYRIGHTED LACE DESIGNS .......................................................... 2

  II.  DEFENDANTS' INFRINGING ACTIVITIES ............................................................. 4

LEGAL ARGUMENT ............................................................................................................ 6

   I.  STANDARD FOR SUMMARY JUDGMENT ............................................................ 6

  II.  SUMMARY JUDGMENTSHOULD BE GRANTED AGAINST CABI FOR COPYRIGHT INFRINGEMENT LIABILITY. ........................................................... 7

     A.  Malibu Owns Valid Copyrights. ................................................................. 7

       1.  Malibu is Entitled to a Presumption of Validity Based Upon Its Registrations ..... 7

       2.  Defendants' Collateral Attacks on Malibu's Registrations Should be Rejected ......................................................................... 8

          a.  Any Alleged Errors in Malibu's Copyright Registrations are Innocent and Should Not Invalidate Such Registrations ........................... 8

          b.  Defendants' Attack On Malibu's Ownership in the Lace Designs Similarly Should be Rejected Because the Lace Design Creators Do Not Dispute That Malibu is the Rightful Owner ........................................................ 10

     B.  Defendants Infringed Upon Malibu's Copyrighted Lace Designs. ............................ 12

       1.  Defendants Actually Copied Malibu's Copyrighted Lace Designs ..................... 12

          a.  Direct Evidence of Copying.......................................................... 13

          b.  Indirect Evidence of Copying ....................................................... 14

       2.  Defendants' Infringing Garments Further Meets the Standard for Substantial Similarity Because The Lace Used By Defendants Is Identical or Virtually Identical to Malibu's Copyrighted Lace Patterns. .......... 16

CONCLUSION...................................................................................................................... 18

{A061845.DOC/3}

## <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL CASES</u>

<u>Anderson v. Liberty Lobby, Inc.</u>
    477 U.S. 242 (1983)............................................................................................ 7

<u>Arthur A. Kaplan Co. v. Panaria Int'l, Inc.</u>
    1998 WL 603225 (S.D.N.Y. Sept. 11, 1998).................................................. 8, 9, 10

<u>Axelrod & Cherveny Architects, P.C.</u>
    2007 WL 708798 (E.D.N.Y. March 6, 2007) ...................................................... 17

<u>Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.</u>
    150 F. 3d 132 (2d Cir. 1998)................................................................................ 7

<u>Celotex Corp. v. Catrett</u>
    477 U.S. 317 (1986)........................................................................................ 6, 7

<u>Eckes v. Card Prices Update</u>
    736 F.2d 859 (2d Cir. 1984)................................................................................ 9

<u>Eden Toys, Inc. v. Florelee Undergarment Co.</u>
    697 F.2d 27 (2d Cir. 1982),............................................................................... 10

<u>Eve of Milady v. Impression Bridal, Inc.</u>
    957 F. Supp. 484 (S.D.N.Y. 1997) .................................................................. 8, 12

<u>Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.</u>
    25 F.3d 119 (2d Cir.1994).................................................................................. 12

<u>Greeff Fabrics, Inc. v. Spectrum Fabrics Corp.</u>
    1981 WL 1384 (S.D.N.Y. Oct. 23, 1981) ............................................................ 14

<u>Hamil Am., Inc. v. GFI</u>
    193 F.3d 92 (2d Cir. 1999),......................................................................... 7, 12, 16

<u>Ideal Toy Corp. v. Fab-Lu Ltd.</u>
    360 F.2d 1021 (2d Cir. 1966)............................................................................. 14

<u>Jorgensen v. Epic/Sony Records</u>
    351 F.3d 46 (2d Cir. 2003)................................................................................. 12

<u>Judith Ripka Designs, Ltd. v. Preville</u>
    935 F. Supp. 237 (S.D.N.Y.1996) ..................................................................... 12

<u>Just in Materials Designs, Ltd. v. Arise Textile, Inc.</u>
    1980 WL 1138 (S.D.N.Y. Mar. 13, 1980) ........................................................... 17

Lipton v. Nature Co.
    71 F.3d 464 (2d Cir.1995)..................................................................................... 13

Malden Mills, Inc. v. Regency Mills, Inc.,
    490 F. 2d 1092 (2d Cir. 1974).............................................................................. 17

Novelty Textile Mills, Inc. v. Joan Fabrics Corp.
    558 F.2d 1090 (2d Cir. 1977)........................................................................... 7, 16

Peter Pan Fabrics, Inc. v. Martin Weiner Corp.
    274 F.2d 487 (2d Cir. 1960).................................................................................. 16

Russ Berrie & Co. v. Jerry Elsner Co.
    483 F. Supp. 908, 988 (S.D.N.Y. 1980)............................................................... 9

Sheldon v. Metro-Goldwyn Pictures Corp.
    81 F.2d 49 (2d Cir.1936)....................................................................................... 17

Soptra Fabrics Corp. v. Stafford Knitting Mills
    490 F. 2d 1092 (2d Cir. 1974).............................................................................. 17

Stratchborneo v. Arc Music Corp.
    357 F. Supp. 1393 n.6 (S.D.N.Y. 1973)................................................................ 8

Yurman Design, Inc. v. PAJ, Inc.
    262 F.3d 101 (2d Cir. 2001).................................................................................... 7

FEDERAL STATUTES

17 U.S.C. § 204(a) ................................................................................................. 10

17 U.S.C. § 410(c) ................................................................................................... 7

FEDERAL RULES

Fed. R. Civ. P. 56(c) ................................................................................................ 6

Fed. R. Civ. P. 56(e) ................................................................................................ 7

**INTRODUCTION**

Defendants Carol Anderson, Inc. and CABI, LLC (collectively, "defendants" or "CABI") have knowingly and purposefully infringed upon three copyrighted lace designs owned by Plaintiff Malibu Textiles, Inc. ("plaintiff" or "Malibu") by manufacturing garments using lace designs that are identical to or virtually identical to Malibu's copyrighted lace designs.

For at least the past five years, Malibu and CABI were engaged in a business relationship in which CABI purchased hundreds of thousands of dollars of lace fabric from Malibu, including lace in each of the three lace designs at issue. CABI subsequently ended its business relationship with Malibu and sought other lace suppliers to provide lace for its garments. However, instead of finding new lace designs to incorporate into its clothing line, CABI sought out and contracted with foreign manufacturers to knock off Malibu's copyrighted lace designs, on at least one occasion actually advising them to "change" Malibu's "original" designs.

However, it does not even appear that CABI even bothered to change Malibu's copyrighted designs. A side-by-side comparison of Malibu's lace designs with CABI's garments clearly establishes that the lace designs used by CABI in their garments are strikingly similar, if not identical or virtually identical to Malibu's copyrighted lace designs. As it is irrefutable that CABI had access to each of Malibu's copyrighted lace designs, plaintiff's motion for summary judgment as to liability for copyright infringement should be granted.

**STATEMENT OF FACTS**

For over 30 years, Malibu has been operating as a lace converter, in other words, a company that purchases undyed lace (known as "greige goods") from a textile mill or knitter, which it dyes and finishes to a buyer's specifications for sale and use in manufacturing garments.

Declaration of Mitchell Naidrich ("Naidrich Decl."), ¶ 2.  When Malibu seeks a new lace design

to offer to its customers, it contacts one of its knitters and explains what features it is looking for.

*Id.*, ¶ 3.  The knitter, who either has designers on staff or who contracts with independent

designers, will obtain a number of potential designs for selection by Malibu.  *Id.*  As is industry

practice, at the moment Malibu chooses a lace design to be knit, the knitter transfers to Malibu

all rights and title in the design, including the right to apply for a copyright registration in the

design and to sue third parties for copyright infringement, in return for Malibu's agreement to

use the knitter to knit the design.  *Id.*, ¶ 4; see also Declaration of Matthew A. Kaplan ("Kaplan

Decl."), Ex. A (Deposition of Joseph Dickenson 100:22 to 101:16), Ex. B (Deposition of Robert

Jabelin 59:1-13).  Malibu obtained all rights, including copyright, in each of lace designs at issue

in this manner.

## I.    MALIBU'S COPYRIGHTED LACE DESIGNS

**Malibu's First Design** – Malibu owns the copyright in an original lace design

pattern, known as Pattern No. 1717.  Second Amended Complaint, Ex. A.  In or around 1998,

Malibu approached one of its knitters, Paris Lace, Inc., to create and knit an original floral lace

design for Malibu.  Kaplan Decl., Ex. A.  As Paris Lace, Inc. did not have the necessary

equipment to knit the type of lace requested, Paris Lace, Inc. approached another knitter, Linfalls

Knitting Mills, Inc. ("Linfalls"), to obtain and knit the original lace design.  *Id.*;  Declaration of

Oswin Fischbach ("Fischbach Decl."), ¶ 4.  Linfalls then commissioned independent designer

Jolanda Kramm to create the lace design for Malibu.  *Id.*; Declaration of Jolanda Kramm

("Kramm Decl."), ¶ 4.  Ms. Kramm presented Linfalls with two original designs for Malibu's

consideration, and Malibu selected design "N.1".  Kramm Decl., ¶ 5, Ex. B.  At the moment

Malibu accepted the design, Ms. Kramm assigned to Malibu all rights she had in the lace design,

including the right to apply for a copyright registration and to take legal action against past,

{A061845.DOC/3}

present and future infringers.  Kramm Decl., ¶ 8.  Similarly, to the extent that Linfalls obtained

any rights in the design, it similarly assigned such rights to Malibu.  Fischbach Decl., ¶ 7.

Malibu applied for and obtained Registration No. VA 923-088, effective October 20, 1998, for

Pattern No. 1717.  Second Amended Complaint, Ex. B.

Thereafter, Malibu made minor modifications to the construction of Pattern No.

1717, namely to fill in a small portion of the center of a floral element.  Kaplan Decl., Ex. A

(Dickenson Dep. 83:7-14).  Depending on the yarn used to manufacture the lace fabric, the

modified pattern became known by Malibu as Pattern No. 1967 or Pattern No. 2120.  *See id.*

(Dickenson Dep. 118:21 to 119:6).  Malibu then applied for and obtained Registration No.

VA 1-159-155, effective August 26, 2002, in Pattern No. 1967.  Second Amended Complaint,

Ex. D (collectively, Malibu's Pattern No. 1717, 1967 and 2120 will be referred to herein as

Malibu's "First Design.")

**Malibu's Second Design** – Malibu owns the copyright in another original lace

design pattern, known as Pattern No. 2351, which was created by a knitter, Metritek, LLLP

("Metritek") for Malibu.  Kaplan Decl., Ex. A (Deposition of Richard Samuels, 51:4 to 8).

Depending on the type of yarn used to manufacture the lace, Malibu also designated this design

as Pattern No. 2479.  (collectively, Pattern Nos. 2351 and 2479 are referred to as the "Second

Design.")  As was Metritek's long standing practice, in return for Malibu's agreement to use

Metritek exclusively to knit Malibu's Second Design lace, Metritek assigned all rights in those

patterns, including the right to apply for copyrights and to file lawsuits to enforce those

copyrights against infringers at the moment Malibu selected the design.  Kaplan Decl., Ex. B

(Jabelin Dep 59:1-13, Master Agreement).  Malibu applied for and obtained Registration No.

VA 1-373-475, effective August 31, 2006, in the Second Design.  Second Amended Complaint, Ex. F.

**Malibu's Third Design** – Malibu also owns the copyright in an original lace design pattern known as Pattern No. 1307, which also was created by Metritek for Malibu.  *See* Second Amended Complaint, Ex. G; Kaplan Decl., Ex. B (Jabelin Dep. 19:6-24).  As above, in return for Malibu's agreement to use Metritek exclusively to knit this lace pattern, Metritek assigned all rights in the pattern, including the right to apply for copyrights and to file lawsuits to enforce those copyrights against infringers at the moment Malibu selected the design.  Kaplan Decl., Ex. B (Master Agreement).  Malibu applied for and obtained Registration No. VA 640-234, effective November 25, 1994, in Pattern 1307.  Second Amended Complaint, Ex. H.

Over time, the construction of Pattern No. 1307 was modified slightly to remove "clips" (i.e., threads that run in straight lines between floral motifs left during the mechanical creation of the lace fabric and which previously had to be cut by hand) from the lace design, and later to change the gauge (number of rows per inch) of the pattern.  Kaplan Decl., Ex. B (Jabelin Dep., 33:17-24, 35:3-16).

After the gauge was modified, the pattern became known as Malibu's Pattern No. 2433 (collectively, Pattern Nos. 1307 and 2433 are referred to as the "Third Design.") Again, in return for Malibu's agreement to use Metritek exclusively to knit Pattern No. 2433 lace, Metritek assigned all rights in that pattern to Malibu.  Kaplan Decl., Ex. B (Master Agreement).  Malibu applied for and obtained Registration No. VA 1-373-476, effective August 31, 2006 for Pattern No. 2433.  Second Amended Complaint, Ex. J.

## II.    DEFENDANTS' INFRINGING ACTIVITIES

Since at least October 2003, Malibu and CABI have been engaged in a business relationship in which Malibu sold various styles of lace to CABI for use in manufacturing

4

women's clothing, including Malibu's Copyrighted Lace Designs. Naidrich Decl., ¶ 10.  In February 2005 and July 2006, Defendants purchased samples totaling seventeen (17) yards of Malibu's First Design lace fabric.  Naidrich Decl., ¶10, Ex. B; Kaplan Decl., Ex. D.  From February 2004 through July 2006, Defendants purchased over 14,000 yards of Malibu's Second Design lace fabric.  Naidrich Decl., ¶ 11, Ex. B; *see also* Kaplan Decl., Ex. D.  In February and August 2005, CABI purchased samples totaling thirteen (13) yards of Malibu's Third Design lace fabric.  Naidrich Decl., ¶ 12, Ex. B; Kaplan Decl., Ex. D.

Moreover, CABI's representatives met with Malibu representatives from time to time to view and purchase samples of Malibu's lace fabric.  Naidrich Decl., ¶ 13.  Such meetings took place in or around February 2005, July 2006 and August 2006.  *Id.*  Among the textile and lace patterns shown to CABI's representatives during those meetings were the First, Second and Third Designs.  *Id.*

In or around early to mid-January 2007, Malibu learned that CABI was offering for sale a Lace Top, style number 427, which infringes upon the Second Design.  Naidrich Decl., ¶ 14.  Mitchell Nadrich, one of Malibu's co-owners, obtained a copy of the Lace Top to examine.  *Id.*; *see* Kaplan Decl., Ex. E.  Shortly after obtaining the garment, Mr. Naidrich went to CABI's offices to meet with Scott Farquhar, CABI's CEO, to discuss Malibu's discovery of the infringing garment and to attempt to work out an amicable resolution. *Id.*, ¶ 15.  When confronted regarding what looked like a clear case of infringement by CABI, Mr. Farquhar's response was that as long as CABI changed Malibu's pattern by 30 percent, CABI could not be found to infringe upon Malibu's copyrights.  *Id.*, ¶ 16.  When Mr. Naidrich advised Mr. Farquhar that Malibu would have to file a lawsuit against CABI if it was unwilling to work out a resolution, Mr. Farquhar told Mr. Nadrich to "do what you have to do."  *Id.*, ¶ 16.  On January

{A061845.DOC/3}

29, 2007, Malibu's counsel sent CABI a cease and desist letter demanding CABI cease from selling garments with lace that infringes upon the Second Design. *Id.*, ¶ 17.

Then, in or around March 2007, Malibu learned that Defendants were infringing upon another Malibu's First Design, offering three garments on their website: a Lace Tunic, style number 488; a Lace Top, style number 490; and a Lace Tank, style number 601. Naidrich Decl., ¶ 18; *see* Second Amended Complaint, Exs. L-N. Again, Malibu's counsel sent another cease and desist letter to CABI advising them to stop selling and distributing garments with lace that infringes upon Malibu's copyrighted lace designs. Naidrich Decl., ¶ 19.

Finally, in or around September 2007 after this lawsuit was filed, Malibu learned that CABI was offering for sale yet another garment with a lace design that infringes upon Malibu's copyrighted Third Pattern. Specifically, Malibu learned that CABI offered as part of their Fall 2007 clothing line advertised on their website, the La Belle Dress, Style No. 714, which infringes upon Malibu's copyrighted Third Design. Naidrich Decl., ¶ 20; Second Amended Complaint, Ex. O. Mr. Nadrich obtained a copy of that garment as well. *See* Kaplan Decl., Ex. E.

At no time has Malibu ever given CABI authorization, consent or a license to copy, use or change any of its Copyrighted Lace Designs. Naidrich Decl., ¶ 21.

## LEGAL ARGUMENT

### I.    STANDARD FOR SUMMARY JUDGMENT

This Court should grant plaintiffs' motion for partial summary judgment if it determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding the motion, the Court is to view the facts and draw all

reasonable inferences in favor of the non-moving party. *See Castle Rock Entertainment, Inc. v. Carol Publishing Group, inc.*, 150 F. 3d 132, 137 (2d Cir. 1998).

However, once the moving party shows that it is entitled to summary judgment, the burden shifts to the opposing party to provide evidence and specific facts to show there are genuine issues of material fact. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e) (party "may not rest upon the mere allegations of its pleading"). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1983). In the absence of such a showing by defendants, summary judgment is to be entered in plaintiffs' favor. Fed. R. Civ. P. 56(e).

## II.   SUMMARY JUDGMENT SHOULD BE GRANTED AGAINST CABI FOR COPYRIGHT INFRINGEMENT LIABILITY.

To establish a *prima facie* claim of copyright infringement, a plaintiff must demonstrate both: "(1) ownership of a valid copyright, and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 2001) (citation omitted).

### A.   Malibu Owns Valid Copyrights.

#### 1.   Malibu is Entitled to a Presumption of Validity Based Upon Its Registrations

A Certificate of Registration from the United States Register of Copyrights constitutes *prima facie* evidence of ownership of a copyright. 17 U.S.C. § 410(c); *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977). Moreover, registrations obtained within five years of the date of first publication constitute *prima facie* evidence of the validity of the copyright, including proof of the originality of the work. 17 U.S.C. § 410(c);

7

*Stratchborneo v. Arc Music Corp.*, 357 F. Supp. 1393, 1399 n.6 (S.D.N.Y. 1973) ("Certificates of Registration in the Copyright Office are *prima facie* proof of originality.")

Malibu owns copyright registrations not only for each of the lace designs[1] at issue, but also in the original designs from which two of the three lace designs were derived. *See* Second Amended Complaint, Exs. B, D, F, H and J. Each registration was obtained within five years of the date of first publication of such pattern. *See id.* Consequently, Malibu should be afforded every *prima facie* presumption it is entitled to under the Copyright Act.

2. **Defendants' Collateral Attacks on Malibu's Registrations Should be Rejected.**

Given the overwhelming evidence of infringement, Malibu expects CABI to raise baseless and irrelevant technicalities relating to Malibu's copyright registrations and ownership of its Copyrighted Lace Patterns. CABI's attacks on Malibu's copyright registrations and ownership lack legal and factual support and should be rejected.

a. **Any Alleged Errors in Malibu's Copyright Registrations are Innocent and Should Not Invalidate Such Registrations.**

First, Malibu expects CABI to assert that Malibu's copyright registrations are invalid because of alleged errors in designating itself as the author of the lace designs as a "work for hire" instead of as acquiring rights by assignment. However, courts in the Second Circuit generally do not dismiss cases based upon innocent errors in copyright applications. *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, 1998 WL 603225 (S.D.N.Y. Sept. 11, 1998). The Second Circuit has clearly held that "only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the

---

[1]     While we do not expect defendants to dispute the point, lace designs, being a form of fabric designs, are copyrightable under the Copyright Act. *Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 489 (S.D.N.Y. 1997) (Scheindlin, J.).

8

registration invalid and thus incapable of supporting an infringement action …." *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) (quoting *Russ Berrie & Co. v. Jerry Elsner Co.*, 483 F. Supp. 908, 988 (S.D.N.Y. 1980)).  "Where the misrepresentation can be construed as inadvertent, innocent or unintentional, <u>it is insufficient to rebut the presumption of validity</u>." *Sunham Home Fashions, LLC v. Pem-America, Inc.*, 2002 WL 31834477 (S.D.N.Y. Dec. 17, 2002) (emphasis added), *aff'd sub nom*, *Pem-America, Inc. v. Sunham Home Fashions, LLC*, 83 Fed. Appx. 369 (2d Cir. 2004).  This is true even with errors in the identity of the author or copyright claimant or whether the work is a work-for-hire.  *Kaplan Co.*, 1998 WL 603225, at *3.

Here, Malibu's owners, who are not attorneys, believed that Malibu obtained its rights in the Copyrighted Lace Designs as "works for hire" because Malibu acquired sole ownership of those designs from its knitters.  *See* Kaplan Decl., Ex. A (Samuels Dep., 49:6 to 12; Deposition of John Irwin, 34:3-17).  Defendants did not adduce any evidence during the depositions of Malibu's principals showing that Malibu intended to defraud the Copyright Office or the individuals or entities from whom Malibu obtained its rights in the Copyrighted Lace Designs.  Consequently, to the extent that there are any errors in Malibu's registrations, they are innocent and inadvertent, and should not preclude Malibu from asserting its claims.  However, even if there is an error regarding whether Malibu acquired its ownership rights by assignment or as a work for hire, such an error would not have resulted in the rejection of Malibu's copyright applications by the Copyright Office because there is no dispute that Malibu owns the lace designs.

Regardless, Malibu has filed with the Copyright Office supplemental registrations for each of the copyright registrations at issue to correct any alleged inadvertent or innocent errors in its applications.  Kaplan Decl., Ex. C.

9

   **b.**  **Defendants' Attack On Malibu's Ownership in the Lace Designs Similarly Should be Rejected Because the Lace Design <u>Creators Do Not Dispute That Malibu is the Rightful Owner.</u>**

   Even if defendants are correct that Malibu "checked the wrong box" and Malibu's Copyrighted Lace Designs are owned by assignment rather than as "works made for hire," the issue is irrelevant because the creators of each of the lace designs do not dispute that they transferred their rights in their designs to Malibu, and that Malibu is the owner of the copyrights at issue. While the Copyright Act provides that assignments or other transfers of rights must be in writing to be effective, 17 U.S.C. § 204(a), it is well settled in the Second Circuit that infringers cannot use the writing requirement as a sword to attack the validity of a copyright and as a shield to avoid liability where there is no dispute between the transferor and transferee of the copyright. *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superseded on other grounds by* Fed. R. Civ. P. 52(a) (where "the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke [Section 204(a)] against the licensee."); *Caravan, Ltd. v. Karin Stevens, Inc.*, 2001 WL 1426698, at *1-2 (S.D.N.Y. Nov. 14, 2001) ("the purpose of section 204(a), after all, is to protect copyright owners from persons mistakenly or fraudulently claiming that a copyright was transferred orally, not to enable third parties to infringe on transferred copyrights whenever there is no formal writing effecting the transfer.")

   It is well settled that the Section 204(a) writing requirement is "satisfied by the copyright owner's later execution of a writing which confirms the agreement." *Eden Toys*, 697 F.2d at 36. Moreover, a subsequent writing to confirm an earlier agreement that is executed <u>after</u> litigation has commenced will satisfy the writing requirement. *Kaplan Co.*, 1998 WL 603225, at *2-3 (explaining, "a writing, even if signed after litigation commenced, can serve to satisfy the requirements of [17 U.S.C. § 204(a)]")(citation omitted).

10

Admittedly, Malibu did not enter into any written agreements with the lace knitters or designers at the time when the lace designs were first approved by and transferred to Malibu; however, it did not do so because Malibu did not believe it needed to. The practice in the lace industry is that converters such as Malibu obtain full ownership in a lace design upon approval of a design that was either commissioned from or submitted by the company that will knit the lace. Kaplan Decl., Ex. A (Dickenson Dep., 100:10 to 101:25), Ex. B (Jabelin Dep., 59:1 to 61-7); Naidrich Decl., ¶ 4. Given this industry practice, neither Malibu, the knitters of Malibu's Copyrighted Lace Designs nor the creator of the First Pattern believed that a written agreement was needed to effectuate the assignment of copyright – it was understood without question that the rights transferred to Malibu upon its acceptance of the design.

Moreover, the failure to have a contemporaneous written agreement is irrelevant because Malibu has obtained subsequent written acknowledgements and agreements from the creators of the lace designs at issue confirming that Malibu was the intended, and proper, copyright owner and fully authorized to register copyright in Malibu's name and file claims to enforce its rights from the moment Malibu approved the designs. *See* Kramm Decl., ¶ 8; Fischbach Decl., ¶¶ 6, 7; Kaplan Decl., Ex. A (Acknowledgement of Rights), Ex. B (Master Agreement). Indeed, all parties deposed by defendants confirmed that Malibu is the only owner of the lace designs.

In short, defendants cannot assert any defenses that should overcome the presumption of validity in Malibu's copyright registrations. There is no genuine issue of material fact regarding Malibu's ownership of its Copyrighted Lace Designs and summary judgment should be granted on the issue of the validity of Malibu's copyright registrations.

{A061845.DOC/3}

**B.    Defendants Infringed Upon Malibu's Copyrighted Lace Designs.**

To establish copyright infringement, the copyright owner must demonstrate: "'(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's.'" *Hamil Am., Inc.*, 193 F.3d at 99 (citation omitted) (emphasis in original); *see also Eve of Milady*, 957 F. Supp. at 487. Notwithstanding the fact that CABI's counsel conceded at the January 22, 2008 pre-motion conference that CABI had access to Malibu's Copyrighted Lace Designs and that the lace designs used by CABI are substantially similar to Malibu's Copyrighted Lace Designs, Kaplan Decl., ¶ 10,[2] plaintiff can establish infringement as a matter of law.

**1.    Defendants Actually Copied Malibu's Copyrighted Lace Designs.**

Actual copying can be demonstrated either by direct evidence of copying or by circumstantial evidence, such as evidence that the alleged infringer had access to the protected work and "that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quotations omitted); *Hamil Am., Inc.*, 193 F.3d at 99. In the absence of direct evidence of copying, which is rarely available, a copyright owner can establish actual copying by showing: (1) "that the defendant had access to the plaintiff's work" and (2) "that the works are similar enough to support an inference that the defendant copied the plaintiff's work." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir.1994). Access may be inferred "when the defendant had a reasonable opportunity to view the [plaintiff's] work before creating its own." *Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 246 (S.D.N.Y.1996) (citation omitted). Proof of

---

[2]    In fact, CABI's counsel stated that the only issue that CABI was disputing was the validity of Malibu's copyright registrations. Kaplan Decl., ¶ 10.

access may also be inferred where "two works are so strikingly similar as to preclude the possibility of independent creation...." *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995). Malibu has both direct and indirect evidence that CABI copied its Copyrighted Lace Designs.

### a.      Direct Evidence of Copying

On April 14, 2008, defendants made available for inspection and copying for the first time, documents establishing that they intentionally copied at least two of Malibu's Copyrighted Lace Designs.  First, attached to a group of documents regarding CABI style number 490 was a photocopy of a sample of Malibu's Second Lace Design (No. 2479), which included a Malibu tag that was date stamped August 4, 2006.  Kaplan Decl., Ex. D.  Also, handwritten on the Malibu tag is "#490", which corresponds to CABI's style no. 490.  *Id.*  Not surprisingly, CABI had sent Malibu a Purchase Order a week earlier on July 31, 2006 requesting a seven yard sample of Style 2479 lace for its Spring 2007 season, which was fulfilled by Malibu. *Id.*; Naidrich Decl., Ex. B.  Moreover, defendants also produced a "Price Request" sheet for the Style No. 490 which states that the "Fabric Quality" for the lace to be used is to be the "**Same** as sample and see swatch provided [by CABI]."  *Id.* (emphasis added).

There is even more egregious evidence demonstrating knowing and purposeful copying of Malibu's Third Design.  Regarding CABI's Style No. 714, CABI produced photocopies of Malibu's original Third Design, some of which have markings on the original design (apparently to designate changes).  Kaplan Decl., Ex. D.  One of the marked-up photocopies even states "**Review Malibu Lace**".  *Id.* (emphasis added).  Defendants also produced a "Price Request" sheet for Style No. 714 which states that the lace to be used in Style 714 is "**being developed for CABI. note it must be 30% different than original**."  *Id.* (emphasis added).  The foregoing documents clearly establish that CABI intentionally copied Malibu's original Third Design and attempted to change it slightly to avoid liability.  However,

13

slight changes will not excuse an infringer from liability. *Greeff Fabrics, Inc. v. Spectrum Fabrics Corp.*, 1981 WL 1384, at * 4 (S.D.N.Y. Oct. 23, 1981) ("The slight changes in the two designs are not enough to save defendant from liability since the similarity between [the designs] is such as to lead the average lay observer to recognize the [the second design] as having been appropriated from … the copyrighted work.") (citing *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966))..[3]

### b.    Indirect Evidence of Copying

Moreover, defendants cannot and do not dispute that they had access to Malibu's Copyrighted Lace Patterns. CABI does not deny that it purchased Malibu's Copyrighted Lace Designs. *See e.g.*, Defendants' Answer to the Second Amended Complaint, ¶¶ 31 (responding to allegations that CABI purchased Malibu's First and Second Design lace merely by "referring to the books, records, and documents evidencing the sales"). Nor can it. Defendants purchased seventeen yards of First Design lace, over 14,000 yards of Second Design lace and thirteen (13) yards of Third Design lace. Nadrich Decl., ¶¶ 10-12, Ex. B. Further, CABI's representatives met with Malibu's representatives in or around February 2005, July 2006 and August 2006 to view and purchase samples of Malibu's lace fabric. *Id.*, ¶ 13. During such meetings, Malibu's Copyrighted Lace Designs were shown to defendants' representatives.[4] *Id.*

Further, a side-by-side visual comparison of Malibu's Copyrighted Lace Patterns with the lace in defendants' Infringing Garments establishes probative similarity. Based upon

---

[3]    Even if CABI somehow changed Malibu's Copyrighted Lace Patterns, there is no evidence that would support a finding that the patterns were changed by 30% and, more importantly, that there is even case law to support a finding that an infringer escapes liability when he changes a pattern by a certain percentage.

[4]    As defendants did not produce in discovery additional copies of the infringing garments to submit to the Court, Malibu will provide the Court with samples of Malibu's lace and with its copies of CABI's garments under separate cover.

the two designs, it is clear that CABI's lace is at a minimum, strikingly similar, if not identical or

virtually identical to Malibu's copyrighted lace designs.



Malibu's First Design



CABI's Style 490 Lace Top



Malibu's Second Design



CABI's Style 427 Lace Top

15




Malibu's Third Design Lace                    CABI's Style 714 La Belle Dress

*Compare* Naidrich Decl., Ex. A with Kaplan Decl., Ex. E.

Therefore, Malibu can establish actual copying as a matter of law such that summary judgment is appropriate on this point.

> **2.    Defendants' Infringing Garments Further Meets the Standard for Substantial Similarity Because The Lace Used By Defendants Is Identical or Virtually Identical to Malibu's Copyrighted Lace Patterns.**

Next, the applicable test for substantial similarity of fabric patterns is whether an "'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Hamil Am., Inc.*, 193 F.3d at 100 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). The designs need not be identical, nor does "[t]he copying need … be of every detail so long as the copy is substantially similar to the copyrighted work." *Novelty Textile Mills, Inc.*, 558 F.2d at 1093. (citation omitted). Thus, even if defendants are able to cite to minor differences in the patterns, the Second Circuit clearly held "no plagiarist can excuse the wrong by showing how much of his

16

work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936).

In comparing Malibu's Copyrighted Lace Designs with the lace in CABI's infringing garments, "[t]he Court must consider the two designs in the context in which they are intended to be used." *Just in Materials Designs, Ltd. v. Arise Textile, Inc.* 1980 WL 1138, at *2 (S.D.N.Y. Mar. 13, 1980) (citing *Soptra Fabrics Corp. v. Stafford Knitting Mills*, 490 F.2d 1092 (2d Cir. 1974). In that case, the court explained its substantial similarity analysis as follows:

> examining the two fabrics from a distance of no more than four or five feet, the flow of the design, the sequence, spacing and arrangement of the flowers … are all likely to lead the average observer to conclude that the two fabrics are identical. This seems particularly true if we consider the context, women's dresses, in which the parties agree that both these fabrics are likely to be used. <u>Rather than being viewed in a hanging position as they would be if used for a curtain or drape, the fabrics will be viewed draped in one form or another around a female body. In this context, the differences pointed to by defendant … are not likely to attract the attention of the average viewer.</u>

*Id.* (emphasis added); see also *Malden Mills, Inc. v. Regency Mills, Inc.*, 490 F.2d 1092 (2d Cir. 1974) (finding "obvious" substantial similarity where fabric "designs are of such likeness with regard to subject matter, style of representation, shading, composition, [and] relative size and place of components ….")

Here, to find substantial similarity, all the Court need do is examine Malibu's Copyrighted Lace Designs and the infringing garments side by side to determine that the lace patterns used in CABI's infringing garments are virtually identical to, if not completely identical to Malibu's Copyrighted Lace Patterns. *See e.g.*, *Axelrod & Cherveny Architects, P.C.*, 2007 WL 708798, at *13 (E.D.N.Y. March 6, 2007) (finding two architectural designs to be virtually identical, explaining: "This case presents the rare instance where a court can determine, based

upon the parties' submissions alone, that two works are substantially similar as a matter of law.") (citations omitted)).

Moreover, in reviewing Malibu's lace fabric and the infringing garments side-by-side, to the extent that CABI attempted to change the designs to attempt avoid liability for infringement, any change to the designs is so minor as to be insignificant because the look and feel of the overall patterns remain virtually identical. When viewed from a short distance, as an ordinary observer would do when looking at an woman wearing a CABI garment, the placement, arrangement, orientation and size of the components of the lace designs in CABI's garments are virtually identical to Malibu's Copyrighted Lace Designs. Therefore, the Court should find that the lace designs used in CABI's garments are substantially similar to Malibu's Copyrighted Lace Designs, and that CABI illegally copied such designs as a matter of law.

## CONCLUSION

There being no genuine issues of material fact, plaintiff respectfully submits that the Court should find that defendants infringed upon plaintiff's rights in its Copyrighted Lace Designs and grant plaintiff's motion for partial summary judgment on the issue of copyright liability.

Dated:    New York, New York
          April 17, 2008

                              COWAN DEBAETS ABRAHAMS
                                & SHEPPARD LLP

                              By:_____
                                 Nancy E. Wolff
                                 Matthew Kaplan

                              41 Madison Avenue - 34th Floor
                              New York, New York 10010
                              Tel. (212) 974-7474
                              Fax (212) 974-8474
                              *Attorneys for Plaintiff Malibu Textiles, Inc.*

18

{A061845.DOC\2}