UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MALIBU TEXTILES, INC.,

                      Plaintiff,

      -against-

CAROL ANDERSON, INC., and CABI, LLC,

                     Defendants.

-----------------------------------------------------------X

Index No: 07 CV 4780 (SAS)

Judge Scheindlin

**DECLARATION OF HARLAN M. LAZARUS
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

I, HARLAN M. LAZARUS, declare, pursuant to 28 U.S.C. §1746 that I am a member of the firm Lazarus & Lazarus, P.C., attorneys for Defendants, Carol Anderson, Inc. and CABI, LLC ("Defendants"). I have personal knowledge of all facts stated herein and I could competently testify to the facts stated in this Declaration if called to do so. I submit this declaration in opposition to Plaintiff Malibu Textiles, Inc.'s (the "Plaintiff" or "Malibu") Motion for Partial Summary Judgment (collectively referred to herein as "Plaintiff's Motion").

### PARIS PATTERNS[1]

1. On or about October 20th, 1998, Plaintiff registered Pattern #1717, as a "work made for hire" (the "1717 Registration") (Second Amended Complaint ("Complaint"), Exhibit B).

2. The 1717 Registration set forth the year in which creation of the work was completed as 1998 and the date of first publication as September 11th, 1998.

3. On or about August 26th, 2002 Plaintiff registered Pattern # 1967 as a "work made for hire" (the "1967 Registration") (Complaint, Exhibit D).

4. On or about January 18th, 2008, Plaintiff's counsel in these proceedings represented to the Court that "Malibu commissioned the lace patterns [the lace patterns subject of Plaintiff's action] as a work for hire". See **Exhibit A** attached hereto.

5. The 1967 Registration set forth the year in which creation of the work was completed as 2000 and the date of first publication as July 1, 2000. See 1967 Registration, Complaint, Exhibit D.

---

[1] Patterns 1717 and 1967 are here and in the accompanying Memorandum of Law referred to collectively referred to as the "Paris Patterns"

6. On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings, upon a United States Copyright Office Form CA, and contrary the 1717 Registration and Plaintiff's counsel's earlier representations, Plaintiff admitted that Pattern #1717 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from Jolanda Kramm upon Plaintiff's "acceptance of the design". See Declaration of Matthew Kaplan ("Kaplan Dec.") Ex. C.

7. Jolanda Kramm ("Kramm"), upon whose Declaration Plaintiff, in part, moves, was not set forth in Plaintiff's Rule 26(a)(1)(a)(i) Disclosures. See **Exhibit B** attached hereto.

8. On or about April 16th, 2008, upon signature of Plaintiff's counsel in these proceedings, and upon a United States Copyright Office Form CA,   Plaintiff admitted that Pattern # 1967 was a) based on a pre-existing work (Pattern 1717); and b) (contrary Plaintiff's earlier representations to the Copyright Office and  the Court) was not a "work made for hire". See Kaplan Dec. Ex. C.

9. On or about September 29th, 2005, seven years after the creation of Pattern 1717, Kramm executed an unsworn Acknowledgement of Rights ("Kramm Acknowledgement") setting forth the "purchase" of the copyright and "my sketch" by [Paris Lace Inc. ("Paris")]. Exhibit A to Kramm Declaration.

10. The Kramm Acknowledgement sets forth that the purchased sketch was *commissioned* (but not created) on or about September 15th, 1998.

11. The Kramm Acknowledgement concludes that [Plaintiff] is the owner of the copyright in the "attached sketch which is *initialed* by me" (italics supplied). The Kramm sets forth no express words of assignment or transfer.

12.  The Kramm Acknowledgement does not identify by pattern number the pattern subject of the Acknowledgement, and, on the face of the Kramm Acknowledgement, and in the absence of the attached initialed sketch, there is no means to identify the sketch to which Kramm refers.

13. The copy of the Kramm Acknowledgement produced by Plaintiff prior to Plaintiff's Motion did not have the "initialed sketch" attached to it.  See **Exhibit C** attached hereto.

14. On or about March 3, 2008, counsel to Plaintiff in these proceedings wrote to Kramm with seven questions (the "Kramm Inquiry"). A copy of the Kramm Inquiry is annexed hereto as **Exhibit D**.

15. A copy of Kramm's response (the "Kramm Response") is annexed as part of **Exhibit D** hereto.

16. In response to the Kramm Inquiry question as to the "originality" of the "sketch" attached to the Kramm Inquiry, Kramm responded, "As I remember, this sketch is original".

17. In response to the Kramm Inquiry as to the date the "sketch" was created, Kramm responded, "I don't have the date or year when the sketch was created."

18. In response to the Kramm Inquiry as to payment for the "sketch", Kramm confirmed that she was paid by Linfalls Knitting Mills Ltd. ("Linfalls").

19. In response to the Kramm Inquiry as to her memory as to, "anything else regarding the creation of the sketch", Kramm responded, "I don't remember anything special".

20. In response to the Kramm Inquiry, "The acknowledgement refers to you initialing a copy of the sketch. Do you recall doing so? *We have not been able to find an original initialed copy of the sketch.*" Kramm responded, "The initials are not mine. I always sign JK".

21. John Irwin ("Irwin") is President of Plaintiff and testified at deposition on March 6th, 2008.  See **Exhibit E** attached hereto; Irwin at 6.

22. As at March 6th, 2008, Irwin never saw the "sketch" with Kramm's initials. Irwin at 32.

23. Irrespective of the Kramm Response (and irrespective of Plaintiff's failure to name Kramm on, inter alia, Plaintiff's Initial Disclosures),  Plaintiff now submits the Kramm Declaration, which without explanation or clarification, declares and affirms that the lace designs for "Linfalls' client" were "original".

24. Kramm's Declaration at paragraph 4 affirms and declares that after being "commissioned" to design a lace design for "Linfalls client", "I have since found out that Linfalls' client was [Plaintiff]".

25. Irrespective of the Kramm Response, and without explanation or clarification, Kramm declares and affirms at paragraph 6 of the Kramm Declaration that a "sketch enclosed as court exhibit B and *that bear my initials* [italics supplied] are copies of the "sketch" designed for Linfalls' client."

26. The "initialed" sketch attached to the Kramm Declaration was not produced by Plaintiff prior to the filing and service of the Motion on April 17th, 2008, even though the "initialed sketch" was available to Plaintiff no later than April 3, 2008. See April 3, 2008 e mail Matthew Kaplan, Esq. to Kramm enclosing "your declaration with exhibits for review and signature" annexed as **Exhibit F** hereto.

27. *Neither Plaintiff nor Kramm provide any explanation as to the source of the initialed "sketch" attached to the Kramm Declaration, which such previously unavailable sketch purports to be the "sketch" upon which Plaintiff's Pattern 1717 and Pattern 1967 copyright claims arise.*

28. Kramm's Declaration at paragraph 5 affirms and declares, "I learned from [Rolf Mueller] [of Linfalls] that the first design …was selected", but Mueller is deceased.  See **Exhibit G** attached hereto; the Joseph Dickenson ("Dickenson") Transcript at 50. No explanation is given as to when Kramm so learned.

29. Linfalls itself is a defunct New Jersey corporation and has been so since September 2004. See Dickenson Transcript at 43-44.

30. Kramm's Declaration affirms and declares an assignment and transfer to "Linfalls' client" (paragraph 8)  "at the moment that my design was accepted by Linfalls' client"  but *a)* no written assignment or transfer is attached to the Kramm Declaration or in the record before the Court, and no such written assignment or transfer is referred to in the Kramm Response; and *b) no explanation is given as to how such an"at the moment" assignment to Plaintiff took place when, as Kramm declares and affirms at paragraph 4 of the Kramm Declaration, Kramm only subsequently (without supplying a date) found out who the  Linfalls' "client" was.*

31. Kramm's Declaration further contradicts Kramm's earlier Acknowledgement of Rights in that the Kramm Acknowledgement of Rights sets forth a purchase of the "copyright and sketch" by Paris

whereas the later Declaration makes no mention of Paris at all, and declares and affirms that that purchase was by Linfalls' for a "client" whom Kramm later "found out" was Plaintiff.

32. On or about September 20th, 2005, Dickenson, as Chief Executive Officer of Paris Lace, Inc. executed an unsworn Acknowledgement of Rights, wherein Dickenson, set forth that, in connection with [Pattern] 1967, Linfalls paid Kramm (see **Exhibit H**). The Dickenson Acknowledgement of Rights makes no reference to Pattern 1717 from which Pattern 1967 was derived.

33. The Dickenson Acknowledgement of Rights "declares" Plaintiff the owner of [Pattern] 1967 copyright but does not confirm that such transfer took place.

34. Dickenson was deposed pursuant to Subpoena on February 5th 2008 (**Exhibit G** hereto**).

35. Dickenson admitted that Dickenson had no relationship with Kramm. Dickenson at 49.

36. Dickenson admitted that Kramm "is not a person that I ever worked with". Dickenson at 95.

37. On or about September 20th, 2005, Oswin Fischbach ("Fischbach"), then and now of Deltex Mills, Inc., but formerly with Linfalls, executed an unsworn Acknowledgement of Rights, wherein Fischbach, set forth, in connection with [Pattern] 1967, that Linfalls paid Kramm (see **Exhibit I**). The Fischbach Acknowledgement of Rights makes no reference to Pattern 1717 from which Pattern 1967 was derived.

38. Fischbach, upon whose Declaration Plaintiff, in part, moves, was not set forth in Plaintiff's Rule 26 (a)(1)(a)(i) Disclosures (see Exhibit B annexed hereto).

39. Fischbach admits at paragraph 7 of the Fischbach Declaration, that Linfalls contracted with Kramm.

40. The Fischbach Declaration avers that it was "expected" that Kramm would "assign" the copyrights to Plaintiff, but does not confirm that such an assignment took place.

41. The Fischbach Declaration also avers, "...to the extent Linfalls obtained any rights...Linfalls assigned and transferred any and all such rights to Malibu when Malibu accepted Ms. Kramm's Design" (Fischbach Declaration at paragraph 7).

42. No written assignment or transfer from Linfalls to Plaintiff is in the record before the Court.

43. Fischbach's Declaration, which refers to an assignment and transfer of rights from Linfalls to Plaintiff, contradicts Plaintiff's April 16th, 2008 United States Copyright Office Form CA filings with respect to the same pattern because Plaintiff's April 16th 2008 United States Copyright Office Form CA filings, claim title passed to Plaintiff, not from Linfalls, but from Kramm.

44. To the extent the Fischbach Declaration, confirms an assignment from Linfalls to Plaintiff, Fischbach's Declaration contradicts the Kramm Declaration which sets forth that Kramm, and not Linfalls' "assigned and transferred" the property rights to Plaintiff.

45. Fischbach's Declaration sets forth that, "…it was *expected* [italics supplied] that [Kramm] would assign and transfer …ownership" , but no written assignment or transfer from Kramm to Linfalls or Plaintiff is in the record before the Court.

46. Dickenson admitted at Dickenson's February 5th, 2008 deposition that Pattern 1717 was knit as early as September 4th, 1998. See Dickenson at 137, referring to, *inter alia*, a Linfalls' knitting record bearing Bates Stamp number Paris 53 (**Exhibit J** annexed hereto).

47. Dickenson admitted at Dickenson's February 5th, 2008 deposition, "…but the reality of it is that 99 percent of every lace pattern is a floral pattern." (See Dickenson at 67.)

48. Dickenson "admitted" that the Linfalls' knitting date of September 4th, 1998 was prior to the September 15th "commission" date set forth in the Kramm Acknowledgement of Rights (Exhibit H; Dickenson at 137).

49. Linfalls could not have knit Pattern 1717 before Kramm created it, and Dickenson admitted, *inter alia*, that, "We've got dates wrong here." (See Dickenson at 138).

## THE METRITEK PATTERNS

50. On or about August 31st, 2006, Plaintiff registered Pattern #2351, as a "work made for hire" (the "2351 Registration") (Complaint, Exhibit F).

51. The 2351 Registration set forth the year in which creation of the work was completed as 2002 and the date of first publication as November 12, 2002.

52. On or about November 20th, 2004, Plaintiff registered Pattern #1307, as a "work made for hire" (the "1307 Registration") (Complaint, Exhibit H).

53. The 1307 Registration set forth the year in which creation of the work was completed as 1992 and the date of first publication as May 1, 1992

54. On or about August 31st, 2006, Plaintiff registered Pattern 2433 as a "work made for hire" (the 2433 Registration") (Complaint, Exhibit K).

55. The 2433 Registration set forth the year in which creation of the work was completed as 2003 and the date of first publication as May 15th, 2003.

56. On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings , upon United States Copyright Office Form CA, and contrary to said counsel's earlier representations (see paragraph 52 above), Plaintiff admitted that Pattern #1307 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from Metritek, Ltd. n/k/a Metritek, LLLP  upon Plaintiff's "acceptance of the lace design". See Kaplan Dec. Ex. C.

57. On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings, upon United States Copyright Office Form CA, and contrary the Pattern 2351 Registration and Plaintiff's counsel's earlier representations (see paragraph 50 above), Plaintiff admitted that Pattern 2351 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from Metritek, LLLP upon Plaintiff's "acceptance of the lace design".  See Kaplan Dec. Ex. C.

58. On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings , upon United States Copyright Office Form CA, and contrary to the Pattern 2433 Registration and Plaintiff's counsel's earlier representations (see paragraph 54 above), Plaintiff admitted that Pattern #2433 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from , Metritek, LLLP  upon Plaintiff's "acceptance of the

lace design". See Kaplan Dec. Ex. C. The said Form CA further set forth that Pattern 2433 was derived from Pattern 1307.

59. On October 22, 2007, approximately six months after this Action was commenced, Plaintiff and Metritek, LLP [sic] executed a letter agreement with respect to Pattern 2351 purporting to confirm an agreement "to work together" on Pattern 2351 which Plaintiff "commissioned" from Metritek in June 2002. See **Exhibit K** attached hereto.

60. The October 22, 2007 letter agreement was written by Plaintiff's counsel. See 69 of deposition transcript of Plaintiff by Richard Samuels ("Samuels"), **Exhibit L** hereto. Samuels signed the October 22, 2007 letter agreement for Plaintiff.

61. The October 22, 2007 letter agreement further set forth, "...and to the extent that the Works are determined not to be works made for hire, Metritek hereby irrevocably ...assigns... copyright rights...to [Plaintiff]".

62. Samuels admitted that he never had a conversation with Robert Jablin ("Jablin") regarding the assignments referred to in the October 22, 2007 letter agreement. See Exhibit L attached hereto; Samuels at 76

63. On January 28th, 2008, Plaintiff and Metritek, LLLP executed two letter agreements, one with respect to Pattern 2433, and the other with respect to Pattern 2351 (which was already the subject of the October 22, 2007 letter agreement). See **Exhibit K** attached hereto.

64. The January 28th, 2008 letter agreements were similar to (but not identical) to the October 22, 2007 letter agreement.

65. The January 28th, 2008 letter agreements purported to confirm the "terms" of prior "oral agreements" wherein Plaintiff "commissioned" Metritek to create "original" designs.

66. The January 28th, 2008 letter agreement set forth that in the event that the "works" were determined not to be works for hire, than "effective as of the Commissioned Date", Metritek assigned the copyright to Plaintiff, including the right to sue for past, present and future infringements.

67. The January 28th letter agreements were sworn to by Jablin for Metritek LLP.

68. On March 6th, 2008, Metritek LLLP and Plaintiff entered into a third agreement, titled "Master Agreement". See Kaplan Dec. Ex. B.

69. The March 6th, 2008 Master Agreement was signed by Samuels for Plaintiff and Jablin for Metritek.

70. The March 6th, 2008 Master Agreement was first produced to Defendant with the filing of Plaintiff's Motion.

71. The March 6th, 2008 Master Agreement recited, inter alia, a "business relationship" since 1986 wherein Metritek created lace designs "commissioned" by Plaintiff.

72. The March 6th, 2008 Master Agreement recites that the parties, since the inception of their business relationship, have been operating under an oral agreement "under which Metritek transfers and assigns all ownership rights, including copyrights, in the Lace Designs" to Plaintiff, immediately upon Plaintiff's approval of the Lace Designs.

73. Although not produced until the date of the Motion, the March 6th 2008 Master Agreement was signed on the same date as Samuels was deposed by Plaintiff.

74. On March 6th 2008, the same date Samuels signed the Master Agreement purporting to confirm a prior "oral agreement" Samuels (at Samuels at 80-81; Exhibit L) was asked the following questions and gave the following answers:

> Q: Have you ever had a discussion with Mr. Jablin concerning the ownership of the copyright with respect to patterns knit by Metritek for Malibu?
>
> A: Anyone in particular or just in general?
>
> Q: Any conversation at all, a specific conversation about ownership of copyrights with Mr. Jablin?
>
> A: No, I don't believe so, no.
>
> Q: How about any other representative of Metritek?
>
> A: No, he would be the only one.

75. The purported oral agreement recited in the March 6th, 2008 Master Agreement contradicts the

October 22, 2007 letter agreement, and the January 28th, 2008 letter agreements, which provide for such transfer only if "the Work is determined not to be a work made for hire".

76. The March 6th, 2008 Master Agreement omit any reference to an "agreement" that any "works" are "work[s]" for hire", which was the principal point of the earlier letter agreements

77. The purported oral agreement recited in the March 6th, 2008 Master Agreement contradicts the October 22, 2007 letter agreement, and the January 28th, 2008 letter agreements in that the purported oral agreement recited in the March 6th, 2008 Master Agreement provides for such transfer "in exchange for [Plaintiff's] promise to exclusively use Metritek as its knitter…", whereas the earlier agreements set forth no such "exchange".

78. Jablin is the owner of Metritek LLLP and testified at a deposition on February 19th, 2008.  See **Exhibit M** hereto at 6.

79. When Jablin signed the October 22, 2007 Letter Agreement, Jablin did not fully understand it (Jablin at 56).

80. Jablin admitted signing the October 22, 2007 letter agreement, although he didn't understand it, "To allow my customer to defend the copyrights" (Jablin at 57).

81. Jablin testified that with respect to the pattern subject of the October 22, 2007 letter agreement, Jablin never had a discussion where the pattern was assigned to Plaintiff;

"There were no conversations, because this is the way we run our company."(Jablin at 59; See also Jablin at 75).

82. Jablin's deposition testimony further contradicts the March 6th, 2008 Master Agreement recitation of a prior oral agreement as to copyright ownership.

83. At Jablin's deposition, Jablin did not recall an "oral agreement" with Plaintiff (as recited in the Master Agreement) wherein there was an agreement with Plaintiff as to the copyright in the designs, and, in connection with such a conversation, specifically noted,

"*If* there was a conversation, it was years ago, …." (italics supplied) (Jablin at 59).

Respectfully Submitted this 7th day of May, 2008,

LAZARUS & LAZARUS, P.C.

*Attorneys for Defendants*

By: _____

HARLAN M. LAZARUS, ESQ. (HML-0268)
240 Madison Avenue, 8th Floor
New York, New York 10016
(212) 889-7400

*TO*:    COWAN, DEBAETS, ABRAHAMS & SHEPPARD, LLP
41 Madison Avenue, 34th Floor
New York, New York 10010
**Attention: MATTHEW KAPLAN & NANCY WOLFF**