*EXHIBIT "G"*

# In The Matter Of:

*MALIBU TEXTILES, INC., v.*
*CAROL ANDERSON, INC.*

---

## JOSEPH DICKINSON
*February 5, 2008*

---

## URBAN COURT REPORTING
*25 West 45th Street – Suite 900*
*New York, NY 10036*
PH: 212-661-8260 / FAX: 212-692-9171

DICKINSON, JOSEPH - Vol. 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MALIBU TEXTILES, INC.,

                   Plaintiff,

   -against-    Docket No. 07-cv-4780 (SAS)

CAROL ANDERSON, INC. and CABI, LLC,

                 Defendants.

------------------------------------x

               February 5, 2008

               11:20 a.m.

     Deposition of JOSEPH DICKINSON, taken by Defendants, pursuant to Subpoena, at the offices of Lazarus & Lazarus, P.C., 240 Madison Avenue, New York, New York, before ERIC J. FINZ, a Shorthand Reporter and Notary Public within and for the State of New York.

Page 42

JOSEPH DICKINSON

12:20:13  2   statement of September 20, 2005?
12:20:17  3     A.  I don't recall.  You know,
12:20:24  4   my sense would be that this was before,
12:20:26  5   but I don't want to say 100 percent
12:20:28  6   that I recall.  Unfortunately it's not
12:20:30  7   dated.
12:20:32  8     Q.  When you say --
12:20:33  9     A.  I would say that, you know
12:20:35 10   what, I need to say I don't know,
12:20:37 11   because I really don't recall.
12:20:39 12     Q.  When you received the
12:20:41 13   subpoena, did you recall giving the
12:20:46 14   September 20th statement that is now
12:20:52 15   Defendants' D, P 120?
12:20:54 16     A.  Do I recall when I received
12:20:55 17   the subpoena, do I recall giving this
12:20:58 18   statement, no.
12:20:59 19     Q.  Prior to today, and me
12:21:02 20   presenting it to you, had you -- when
12:21:05 21   is the last time you saw your statement
12:21:08 22   of September 20, '05?
12:21:10 23     A.  The day I signed it,
12:21:12 24   September 20, 2005.  I haven't seen it
12:21:15 25   since.  I don't recall seeing it since.

Page 43

JOSEPH DICKINSON

12:21:16  2     Q.  Now that you see it, and
12:21:19  3   see that it's dated September 20, 2005,
12:21:26  4   does that refresh your recollection in
12:21:33  5   any fashion as to whether there is a
12:21:36  6   separate file maintained by Paris Lace
12:21:40  7   or yourself that concerns itself with
12:21:44  8   your September 20, '05 transmittal?
12:21:49  9     A.  It's not -- no, I have no
12:21:53 10   file, you know.  Of course when I
12:21:57 11   looked at it today it refreshed my
12:22:00 12   memory of giving a statement.  I
12:22:02 13   remember -- I remember trying to
12:22:04 14   describe this series of events back in
12:22:07 15   2005.  But it's not refreshing my
12:22:09 16   memory with regard to any file.  If
12:22:11 17   that's your question.
12:22:31 18     Q.  When you gave your
12:22:33 19   statement of September 20, 2005, was
12:22:36 20   Linfalls Knitting Mills Ltd. still an
12:22:40 21   operating company?
12:22:41 22     A.  I don't think so, no.
12:22:46 23     Q.  If I told you that records
12:22:53 24   from the Secretary of State in New
12:22:58 25   Jersey indicate that sometime in

Page 44

JOSEPH DICKINSON

12:23:02  2   September of 2004 it became an
12:23:07  3   inactive, dissolved company, would that
12:23:09  4   refresh your recollection as to when it
12:23:12  5   stopped being active?
12:23:13  6     A.  Sounds about right, yes.
12:23:15  7     Q.  Now, when -- withdrawn.
12:23:19  8         What was the business of
12:23:21  9   Linfalls?
12:23:22 10     A.  Knitting mill.
12:23:24 11     Q.  Okay.  And how, if at all,
12:23:29 12   was the business of Linfalls distinct
12:23:32 13   from, in terms of what they did, from
12:23:35 14   what Paris Lace did?
12:23:37 15     A.  They were a direct
12:23:40 16   competitor, a direct competitor and yet
12:23:43 17   a friendly competitor of Paris Lace.
12:23:48 18   We engaged in the same business.
12:23:50 19     Q.  And other than in
12:23:54 20   connection with Paris -- withdrawn.
12:23:57 21         Other than in connection
12:23:58 22   with pattern or style 1967, had Paris
12:24:06 23   Lace and Linfalls ever conducted
12:24:09 24   business with one another?
12:24:11 25     A.  Not business typical to

Page 45

JOSEPH DICKINSON

12:24:17  2   this.  Whatever business we had is more
12:24:21  3   if we needed help, if I needed some raw
12:24:24  4   material or he needed some raw
12:24:26  5   material.  We were friendly
12:24:27  6   competitors.  Meaning that if Linfalls
12:24:29  7   had a question or a problem with
12:24:30  8   something, I would help them, and vice
12:24:33  9   versa.  It was just a good friendly
12:24:41 10   competitors, competitors yet helping
12:24:42 11   each other.  We had never engaged in
12:24:45 12   any subcontracting, if you will.  This
12:24:47 13   was our first attempt at that.
12:24:50 14     Q.  At any time prior to 19 --
12:24:50 15   withdrawn.
12:25:02 16         Have you at any time had any
12:25:05 17   ownership interest in Linfalls Knitting
12:25:10 18   Mills Limited?
12:25:13 19     A.  No.
12:25:13 20     Q.  Has any one of the present
12:25:16 21   equity owners of Paris Lace, Inc. at
12:25:23 22   any time owned any interest, to your
12:25:26 23   knowledge, in Linfalls Knitting Mills
12:25:30 24   Limited?
12:25:31 25     A.  No.

Page 50

| | | |
|---|---|---|
| 12:30:32 | 1 | JOSEPH DICKINSON |
| 12:30:32 | 2 | trying to illustrate the whole series |
| 12:30:36 | 3 | of events. |
| 12:30:38 | 4 |     If your question is did |
| 12:30:39 | 5 | someone tell me, he didn't have to tell |
| 12:30:42 | 6 | me, again, I've known those guys for |
| 12:30:45 | 7 | many, many years. |
| 12:30:47 | 8 |     Q.  And Mr. Mueller is |
| 12:30:50 | 9 | deceased? |
| 12:30:50 | 10 |     A.  Yes. |
| 12:30:50 | 11 |     Q.  How about Mr. Fischbach? |
| 12:30:53 | 12 |     A.  He's still alive. |
| 12:30:54 | 13 |     Q.  Was Mr. Mueller alive in |
| 12:30:59 | 14 | September of 2005? |
| 12:31:01 | 16 |     Q.  The next statement is |
| 12:31:08 | 17 | "Malibu was a customer of Linfalls and |
| 12:31:13 | 18 | of Paris Lace." |
| 12:31:15 | 19 |     A.  Right. |
| 12:31:16 | 20 |     Q.  When you gave this |
| 12:31:17 | 21 | statement in September of 2005, did you |
| 12:31:21 | 22 | have personal knowledge of whether |
| 12:31:27 | 23 | Malibu was a customer of Linfalls and |
| 12:31:30 | 24 | of Paris Lace? |
| 12:31:31 | 25 |     A.  Yes, I had knowledge of |

Page 51

| | | |
|---|---|---|
| | 1 | JOSEPH DICKINSON |
| 12:31:32 | 2 | that. |
| 12:31:33 | 3 |     Q.  And what was the basis of |
| 12:31:35 | 4 | your knowledge? |
| 12:31:36 | 5 |     A.  Just once again, we're, you |
| 12:31:40 | 6 | know, it's a small business, they are |
| 12:31:42 | 7 | located in Clifton, we are friendly |
| 12:31:45 | 8 | competitors.  And we have some -- we |
| 12:31:49 | 9 | had some, I should say, some sense and |
| 12:31:51 | 10 | some understanding of our relationship |
| 12:31:54 | 11 | with Malibu.  So I was aware of the |
| 12:31:57 | 12 | fact that Linfalls had done work and |
| 12:32:01 | 13 | may have been doing work at that time |
| 12:32:04 | 14 | with Malibu, yeah. |
| 12:32:05 | 15 |     Q.  Was Malibu -- withdrawn. |
| 12:32:10 | 16 |     How long was Linfalls in |
| 12:32:16 | 17 | business for, do you know? |
| 12:32:17 | 18 |     A.  No, I don't know, I'm not |
| 12:32:19 | 19 | sure. |
| 12:32:19 | 20 |     Q.  If I told you that the |
| 12:32:22 | 21 | records of the Secretary of State in |
| 12:32:23 | 22 | New Jersey show that it was |
| 12:32:24 | 23 | incorporated in 1976, would that in any |
| 12:32:27 | 24 | manner or form refresh your |
| 12:32:29 | 25 | recollection? |

Page 52

| | | |
|---|---|---|
| | 1 | JOSEPH DICKINSON |
| 12:32:29 | 2 |     A.  That sounds correct.  It |
| 12:32:33 | 3 | sounds about right. |
| 12:32:34 | 4 |     Q.  Now, I believe you |
| 12:32:35 | 5 | testified -- withdrawn. |
| 12:32:37 | 6 |     In 1976, did Linfalls do |
| 12:32:43 | 7 | business with Malibu? |
| 12:32:45 | 8 |     A.  I don't know, but I wouldn't |
| 12:32:48 | 9 | think so. |
| 12:32:49 | 10 |     MS. WOLFF:  1976 you just |
| 12:32:51 | 11 | said? |
| 12:32:52 | 12 |     MR. LAZARUS:  Yes, I did. |
| 12:32:53 | 13 |     MS. WOLFF:  Okay. |
| 12:32:53 | 14 |     Q.  For any year since 1976, |
| 12:33:01 | 16 | Malibu was a customer of Linfalls? |
| 12:33:04 | 17 |     A.  I wouldn't know. |
| 12:33:06 | 18 |     Q.  When you made the statement |
| 12:33:09 | 19 | in your statement of September 20, |
| 12:33:15 | 20 | 2005, Bates stamped P 126 and marked |
| 12:33:19 | 21 | Exhibit D, what years did you intend to |
| 12:33:23 | 22 | refer to when you said Malibu was a |
| 12:33:27 | 23 | customer of Linfalls and of Paris Lace? |
| 12:33:30 | 24 |     A.  The statement was given in |
| 12:33:35 | 25 | 2005.  I merely was illustrating a |

Page 53

| | | |
|---|---|---|
| | 1 | JOSEPH DICKINSON |
| 12:33:39 | 2 | history of my relationship with |
| 12:33:43 | 3 | Linfalls and Malibu Textiles.  The |
| 12:33:48 | 4 | purpose of making that statement was |
| 12:33:50 | 5 | just to indicate that Linfalls was also |
| 12:33:55 | 6 | somebody or a company that worked with |
| 12:33:57 | 7 | Malibu Textiles.  The purpose of that |
| 12:33:59 | 8 | is just to, once again, to illustrate |
| 12:34:02 | 9 | how we came about designing and |
| 12:34:05 | 10 | developing style 1967. |
| 12:34:09 | 11 |     And I felt it was important |
| 12:34:11 | 12 | because when we decide to go into this |
| 12:34:14 | 13 | project, we needed to bring Linfalls |
| 12:34:17 | 14 | in.  Linfalls was already doing |
| 12:34:20 | 15 | business with Malibu, there was some |
| 12:34:23 | 16 | comfort level there.  And so that's the |
| 12:34:26 | 17 | purpose of giving that.  I wasn't |
| 12:34:28 | 18 | trying to get specific, I was merely |
| 12:34:31 | 19 | saying that Linfalls is a known |
| 12:34:36 | 20 | knitting mill and they have done |
| 12:34:37 | 21 | business with Malibu from time to time. |
| 12:34:41 | 22 | But that's -- that was really the |
| 12:34:45 | 23 | purpose of making that statement. |
| 12:34:46 | 24 |     Q.  You make the statement that |
| 12:34:48 | 25 | Malibu was a customer of Linfalls and |

Page 66

JOSEPH DICKINSON

:49:46  2   you know, again, I can't -- I can only
:49:51  3   say that when the discussion took place
:49:55  4   to knit a -- that type of fabric, the
:49:59  5   series of events were as follows: The
:50:02  6   first thing was to sit, I sat with
:50:05  7   Ralph Mueller to gauge his interest in
:50:09  8   doing some development work. And we
:50:13  9   went through the particulars about who
2:50:16 10  would be responsible for the cost and
2:50:19 11  so on, and we settled that part of it.
2:50:22 12  And at that time Ralph contacted and
2:50:26 13  had a sketch submitted.
2:50:29 14        So this paragraph, it's not
2:50:34 15  perfect the way it worded. But there
2:50:40 16  was no sketch so to speak. It was just
12:50:43 17  an idea. An idea to make a lycra,
12:50:50 18  complicated, more involved pattern at
12:50:53 19  that time. So, again, this paragraph
12:50:57 20  is a bit, you know, confusing as to the
12:51:00 21  order of things.
12:51:02 22       Q. Well, is it wrong?
12:51:04 23       A. It's not -- I wouldn't say
12:51:08 24  it's wrong. It says here Malibu
12:51:11 25  approached Paris Lace to obtain a

Page 67

JOSEPH DICKINSON

12:51:13  2   floral pattern. Well, again, that's an
12:51:16  3   oversimplification, but the reality of
12:51:19  4   it is that 99 percent of every lace
12:51:22  5   pattern is a floral pattern. I'm just
12:51:24  6   trying to sum this up the best way I
12:51:26  7   can. I omitted the fact that I could
12:51:28  8   have embellished on that and a floral
12:51:32  9   pattern with lycra, with 42 bars, which
12:51:35 10  is important to us, with the particular
12:51:37 11  ground. I could have done that. I
12:51:40 12  didn't.
12:51:40 13        But I did say because of the
12:51:42 14  intricacy of the pattern, that we
12:51:44 15  subcontracted Linfalls to obtain and
12:51:48 16  knit the design. To obtain means to
12:51:50 17  obtain the sketch, we would do the
12:51:54 18  development, once the sketch is
12:51:56 19  approved we make this draft, which is
12:51:58 20  that big piece of paper we had out on
12:52:01 21  the table, and in fact to knit it.
12:52:03 22  Because we did not have the capability.
12:52:05 23  So it's accurate, it could have been
12:52:08 24  worded slightly better. But it is what
12:52:10 25  it is.

Page 68

JOSEPH DICKINSON

12:52:10  2       Q. It says that in 1998 Malibu
12:52:14  3   approached Paris Lace to obtain a
12:52:18  4   floral pattern.
12:52:19  5       A. Um-hum.
12:52:20  6       Q. Correct?
12:52:20  7       A. Yup.
12:52:21  8       MS. WOLFF: We've gone over.
12:52:23  9   You've asked him that same question
12:52:24 10  five times.
12:52:25 11       MR. LAZARUS: Okay.
12:52:26 12       MS. WOLFF: And he answered
12:52:28 13  you.
12:52:28 14       MR. LAZARUS: I understand
12:52:29 15  your frustration.
12:52:30 16       Q. ... did Paris Lace --
12:52:35 17  was Paris Lace approached by Malibu to
12:52:38 18  create a floral pattern or to obtain a
12:52:41 19  floral pattern?
12:52:42 20       A. It could have read create.
12:52:46 21       Q. Okay. Which was it?
12:52:48 22       A. Obtain, create. You know.
12:52:50 23       Q. Well, you wrote obtain.
12:52:52 24       A. Okay.
12:52:52 25       Q. Did you recall at the time

Page 69

JOSEPH DICKINSON

12:52:55  2   you gave this affidavit, this
12:52:58  3   statement, whether you were approached
12:53:01  4   to obtain or create a floral pattern?
12:53:04  5       A. How about if we said we were
12:53:05  6   approached to obtain a sketch for a
12:53:08  7   floral pattern. Or obtain a floral
12:53:11  8   pattern. You know, the understanding
12:53:16  9   and the clear understanding at that
12:53:19 10  time would be to obtain would mean to
12:53:21 11  create and make a new pattern. And
12:53:24 12  there is a very -- there is an order of
12:53:27 13  events, it's not the only time we've
12:53:29 14  done it. And the way it's done is you
12:53:31 15  get a sketch, we've done it many times,
12:53:33 16  you get, sometimes you get twenty
12:53:36 17  sketches and you throw them all in the
12:53:37 18  garbage. But it's obtain or create.
12:53:40 19  Obtain means to obtain a floral
12:53:43 20  pattern. Obtain meant to obtain the
12:53:45 21  sketch. And that's what we did.
12:53:49 22        So again, should I have said
12:53:51 23  create, well, perhaps. But I think
12:53:54 24  that for purposes of understanding we
12:53:56 25  did obtain a floral pattern. And that

Page 134

JOSEPH DICKINSON

14:51:13  2  much aware of the fact that -- I mean,
14:51:16  3  look, the way I would explain it, they
14:51:18  4  are already aware, I don't have to tell
14:51:20  5  them that Linfalls is out of business.
14:51:21  6  I think their only course of action at
14:51:24  7  that time was to contact the original
14:51:26  8  owner or partner, majority owner in
14:51:29  9  Linfalls, which is Ozwind Fischbach of
14:51:32 10  Deltex Mills. Again, it's never my
14:51:36 11  role to orchestrate all this, you know,
14:51:41 12  I have nothing to do with the lawsuit,
14:51:42 13  I'm not gaining anything from it. I'm
14:51:44 14  just here to present the facts as I
14:51:46 15  know them. I didn't -- what's the need
14:51:50 16  to, they don't have to call me to get a
14:51:52 17  phone number or anything.
14:51:54 18      Q.  How do you account for the
14:51:55 19  fact that your statement of September
14:51:58 20  20, '05 and Mr. Fischbach's statement
14:52:02 21  of September 20, '05 are identical?
14:52:05 22      A.  I have no knowledge of that.
14:52:06 23  I can only say that I gave a statement,
14:52:11 24  and that's it. My assumption would be
14:52:14 25  that when they went to Ozwind and said

Page 135

JOSEPH DICKINSON

14:52:17  2  are these the facts as you recall it,
14:52:20  3  and I would assume he said yes, those
14:52:22  4  are the facts and signed the paper. I
14:52:24  5  don't know. But I don't know because
14:52:26  6  I'm not -- I didn't participate in
14:52:29  7  that. But I would assume that these
14:52:32  8  are the facts, so Ozwind signed off on
14:52:36  9  it. I don't know what else to say.
14:52:37 10      Q.  I want you to look with me
14:52:40 11  at P 128. And do you see that she,
14:52:48 12  Ms. Kramm, in this document declares
14:52:51 13  that on or about September 15, 1998 I
14:52:56 14  was commissioned to prepare a design in
14:52:59 15  lace.
14:52:59 16      Do you see that?
14:53:00 17      A.  Yes.
14:53:00 18      Q.  Do you know where that date
14:53:01 19  came from?
14:53:02 20      A.  I think that's an
14:53:04 21  approximate date as to when we put this
14:53:08 22  thing together. I mean, you know, when
14:53:10 23  you come to somebody -- you have to
14:53:12 24  understand that we do, you know, dozens
14:53:15 25  and dozens of laces every day and all

Page 136

JOSEPH DICKINSON

14:53:18  2  day long. So if somebody comes to me
14:53:20  3  and says, you know, you did this thing
14:53:22  4  back in -- yeah, we did it back around
14:53:25  5  September 15, 1998. Does that mean
14:53:28  6  it's on that date, it's on or about.
14:53:30  7      Q.  Do you see that the date on
14:53:36  8  the document Defendants' E is also
14:53:39  9  September 15, 1998?
14:53:41 10      A.  Yes.
14:53:41 11      Q.  And do you know if you
14:53:43 12  supplied the September 15, 1998 date to
14:53:46 13  Ms. Kramm?
14:53:47 14      A.  No, I had no contact with
14:53:49 15  her.
14:53:49 16      Q.  Just so there is no mystery
14:53:52 17  here, I want to open up E and ask you
14:53:55 18  to look and see if you see Ms. Kramm's
14:53:58 19  initial on E.
14:54:01 20          MS. WOLFF:  On the draft?
14:54:03 21          MR. LAZARUS:  Yes.
14:54:27 22      A.  I don't see anything.
14:54:28 23      Q.  Let's turn it over. Do you
14:54:35 24  see it anywhere on the reverse of E?
14:54:37 25      A.  No.

Page 137

JOSEPH DICKINSON

14:54:38  2          MR. LAZARUS:  Counsel, just
14:54:40  3  to make the record clear, I do not see
14:54:44  4  it. And unless you feel differently,
14:54:48  5  you can show me where it is.
14:54:55  6          MS. WOLFF:  There is a lot
14:54:56  7  of writings here on the edges,
14:54:58  8  something 1630, some initials there, I
14:55:01  9  don't know what that is. There is lots
14:55:02 10  of extraneous writing, but again, this
14:55:05 11  is a draft, not a sketch.
14:55:18 12      Q.  I want to look again in the
14:55:22 13  materials that have been Bates stamped
14:55:23 14  and marked as Paris Exhibit 1-A.
14:55:40 15  Pattern 1717 was the original of what
14:55:42 16  is now known as 1967 without a fill in
14:55:45 17  one of the flowers; is that the correct
14:55:47 18  terminology?
14:55:48 19      A.  Yeah, that's fair enough.
14:55:51 20      Q.  I want you to look at the
14:56:10 21  document that is Bates stamped number
14:56:11 22  Paris 53. And do you see that the
14:56:13 23  earliest indication on this document is
14:56:16 24  that 1717 was knit on September 4,
14:56:19 25  1998?

Page 138

JOSEPH DICKINSON

```
14:56:20  2    A.  Yes.
14:56:20  3    Q.  And would you agree that
14:56:22  4  September 4, 1998 is prior to September
14:56:25  5  15, 1998?
14:56:27  6    A.  I would.
14:56:28  7    Q.  And do you know how it
14:56:29  8  would be that the pattern is knit
14:56:32  9  before Ms. Kramm created the artwork?
14:56:34 10    A.  Then we've got dates wrong
14:56:38 11  here.  Somebody's got a date
14:56:43 12  mislabeled.  Either this is wrong or
14:56:44 13  the 9/15 date is wrong.
14:56:46 14    Q.  And that would mean that
14:56:48 15  Ms. Kramm's date is wrong as well?
14:56:50 16    A.  It says on or about.  You
14:56:51 17  were asking me the same thing and I
14:56:53 18  said to you before, you know, you have
14:56:56 19  to see it from my point of view.  There
14:56:58 20  is no sense for me to go back and say
14:57:00 21  was it November 5th, was it November
14:57:03 22  15th, was it September 4th, was it this
14:57:06 23  and that, because I only know one
14:57:08 24  thing, and I'm testifying that that's
14:57:10 25  an original pattern, Yolanda did the
```

Page 139

JOSEPH DICKINSON

```
14:57:13  2  sketch.  If there is a day or a week or
14:57:15  3  two weeks, you know, it is what it is.
14:57:17  4    Q.  Before you knit you have to
14:57:18  5  buy gray goods; right?
14:57:20  6    A.  Yeah.
14:57:20  7    Q.  Before you knit you have to
14:57:23  8  create and set the knitting machine;
14:57:27  9  don't you?
14:57:27 10    A.  That's correct.
14:57:28 11    Q.  And you have to buy the
14:57:29 12  lace?
14:57:29 13    A.  Um-hum.
14:57:30 14    Q.  Did you have -- did Paris
14:57:33 15  Lace have the lace in-house to make the
14:57:36 16  1717 when she was commissioned to do
14:57:40 17  the artwork?
14:57:41 18    A.  1717 is --
14:57:43 19    Q.  It's a yes or no.
14:57:46 20    A.  The answer is no, we don't
14:57:47 21  have any inventory of a fabric that was
14:57:50 22  not produced yet.
14:57:51 23    Q.  Well, did you have the gray
14:57:54 24  goods or the yarn to knit when -- not
14:58:01 25  you, did Linfalls have the knit, the
```

Page 140

JOSEPH DICKINSON

```
14:58:03  2  raw materials necessary to knit 1717?
14:58:08  3    A.  Are we talking about raw
14:58:10  4  materials, you mean the yarn?
14:58:11  5    Q.  Yes.
14:58:12  6    A.  Yarn is used in dozens of
14:58:13  7  different fabrics, so they may or may
14:58:16  8  not have.
14:58:16  9    Q.  You don't know?
14:58:18 10    A.  It's not, you know,
14:58:21 11  relevant.  Again, there is generic
14:58:24 12  yarns used in here, I don't know if
14:58:26 13  they had the yarn or they ordered it
14:58:27 14  after.
14:58:28 15          MR. LAZAROU:  I have no
14:58:28 16  further questions at this time.
14:58:31 17          (Time noted:  3:00 p.m.)
         18
         19
         20  _____
         21   JOSEPH DICKINSON
         22  Subscribed and sworn to before me
         23  this _____ day of _____, 2008.
         24
         25  _____
```

Page 141

```
 1           JOSEPH DICKINSON
 2  STATE OF NEW YORK )
                      ss:
 3  COUNTY OF NEW YORK )
 4    I wish to make the following
    changes, for the following reasons:
 5
    PAGE LINE
 6  _____  _____ CHANGE _____
               REASON:_____
 7
               CHANGE _____
 8             REASON:_____
 9             CHANGE _____
               REASON:_____
10
               CHANGE _____
11             REASON:_____
12             CHANGE _____
               REASON:_____
13
               CHANGE _____
14             REASON:_____
15             CHANGE _____
               REASON:_____
16
               CHANGE _____
17             REASON:_____
18             CHANGE _____
               REASON:_____
19
               CHANGE _____
20             REASON:_____
21
22      JOSEPH DICKINSON
    Subscribed and sworn to before me
23  this _____ day of _____, 2008.
24
25
```