UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MALIBU TEXTILES, INC.,                              Index No: 07 CV 4780 (SAS)

                                    Plaintiff,         Judge Scheindlin

        -against-

CAROL ANDERSON, INC., and CABI, LLC,

                                    Defendants.
-----------------------------------------------------------X


# DEFENDANTS', CAROL ANDERSON, INC. & CABI, LLC, MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY FOR COPYRIGHT INFRINGEMENT


LAZARUS & LAZARUS, P.C.
*Attorneys for Defendants*
240 Madison Avenue, 8th Floor
New York, New York 10016
(212) 889-7400

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                              i

I.  **INTRODUCTION**                                                  1

II. **STATEMENT OF FACTS**                                            3
    A.  The Paris Patterns                                   3
    B.  The Metritek Patterns                                10

III.**ARGUMENT**                                                     15
    A.  Argument Regarding the Paris Patterns               17
    B.  Argument Regarding the Metritek Patterns            20

IV. **CONCLUSION**                                                   24

**INDEX OF EXHIBITS**                                               ii

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE**

*Anderson v. Liberty Lobby, Inc.,*                                                    16
 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)

*Arica Inst., Inc. v. Palmer,*                                                        16
     970 F.2d 1067, 1071 (2d Cir.1992)

*Carol Barnhart Inc. v. Economy Cover Corp.,*                                        16, 17
     773 F.2d 411, 414 (2d Cir.1985)

*Celotex Corp. v. Catrett,*                                                           16
     477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)

*Design Strategy Inc. v. Davis*                                                       18
     469 F. 3d 284 (2nd Cir. 2006)

*Durham Industries, Inc. v. Tomy Corporation,*                                        17
     630 F.2d 905, 908 (2nd Cir. 1980).

*Effects Associates, Inc. v. Cohen,*                                                  23
     C.A. 9 (Cal) 1990, 908 F.2d 555

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*                                   16
     499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991)

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,*                                  17
     558 F.2d 1090, 1092 n.1 (2d Cir. 1977)

*Russ Berrie, & Co., Inc. v. Jerry Elsner Co., Inc.,*                                 16
     482 F.Supp. at 984-85;


**OTHER CITATIONS**
17 U.S.C. §204 (a)                                                                    18
17 U.S.C. §204 (b) (1)                                                                17
17 U.S.C. §204 (b)(2)                                                                 17
17 U.S.C. § 410(c)                                                                    17
Fed.R.Civ.P. 56(c)                                                                    16
Fed. Civ. Proc. Rules 26 (a) (1) (c)                                                  18
Fed. Civ. Proc. Rules 37 (c) (1)                                                      18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MALIBU TEXTILES, INC.,                                              Index No: 07 CV 4780 (SAS)

                                             Plaintiff,             Judge Scheindlin

         -against-

CAROL ANDERSON, INC., and CABI, LLC,

                                             Defendants.
-------------------------------------------------------------X

**DEFENDANTS', CAROL ANDERSON, INC. & CABI, LLC, MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AS TO LIABILITY FOR COPYRIGHT INFRINGEMENT**

## I.    INTRODUCTION

Defendants, Carol Anderson, Inc. and Cabi, LLC, (the "Defendants") respectfully

submit this Memorandum of Law in Opposition to the Motion of Plaintiff, Malibu

Textiles, Inc. (the "Plaintiff" or "Malibu") for Summary Judgment on liability for

copyright infringement (collectively referred to herein as the "Motion").

Plaintiff, upon signature of counsel, the day prior to the filing of the Motion

purported to amend the pertinent copyright registrations.

Plaintiff's belated "correction" eliminated Plaintiff's "work for hire" title claim.

In lieu thereof, and despite repeated protestations to this Court and Defendants as to the

bona fides of the "work for hire" claims, now claims title to the pertinent copyright

registrations by way of "agreements", principally oral, transferring title to Plaintiff.

But the evidence before the Court shows that Plaintiff's claim of title to the floral

lace copyright registrations through "agreements" of transfer is a fiction, manufactured

1

by Plaintiff upon Plaintiff's belated recognition that Plaintiff's original "work for hire" registrations were improper and would not withstand the scrutiny of this Court.

The preponderance of evidence before the Court shows that Plaintiff did not have title to the floral lace copyrights at the date of the alleged infringements because there was no prior written or oral agreement transferring title to Plaintiff.

Custom and usage are insufficient to vest title in Plaintiff.

Because the "declarations" and "acknowledgements" from third parties purporting to recognize Plaintiff's title are predicated on false claims of prior oral agreements, the "declarations" and "acknowledgements" are of no material value.

The credibility of Plaintiff's title is further damaged by Plaintiff's submission (with respect to the Paris Pattern) of an "initialed" sketch, purporting to be a copy of an "original" that appeared for the first time upon the filing of the Motion (although previously in Plaintiff's counsel's possession). Plaintiff's claims as to the Paris Pattern are further eroded by documents showing that the Paris Pattern was "knitted" before it was "commissioned", an obvious factual impossibility.

The testimony and evidence of Plaintiff's title to the three floral lace copyrights thus far adduced and before the Court is internally inconsistent and contradictory, improperly before the Court in documents never produced in discovery, and proffered upon declarations from persons not disclosed in Plaintiff's Rule 26 (a) (1) disclosures.

Plaintiff's Motion should be denied.

Plaintiff's should further be denied the right to establish Plaintiff's prima facie case merely upon Plaintiff's multiple copyright registrations, "corrected" the day before the Motion's filing.

The denial of such right is particularly appropriate because the evidence before the Court, from Plaintiff's properly disclosed witness, is that 99% of every lace pattern is a floral, therefore, impugning the very notion of "originality" necessary to any legitimate copyright claim.

At trial, Plaintiff should be compelled to prove each element of Plaintiff's copyright infringement claim, including the "originality" of the generic floral lace patterns subject of the registrations.

## II.    STATEMENT OF FACTS

A.    **The Paris Patterns**

On or about October 20th, 1998, Plaintiff registered Pattern #1717, as a "work made for hire" (the "1717 Registration") (Second Amended Complaint[1], Exhibit B).

The 1717 Registration set forth the year in which creation of the work was completed as 1998 and the date of first publication as September 11th, 1998.

On or about August 26th, 2002 Plaintiff registered Pattern # 1967 as a "work made for hire" (the "1967 Registration") (Complaint, Exhibit D).

On or about January 18th, 2008, Plaintiff's counsel in these proceedings represented to the Court that "Malibu commissioned the lace patterns [the lace patterns subject of Plaintiff's action] as a work for hire". See Exhibit A attached to the Declaration of Harlan M. Lazarus, Esq., in Opposition to Plaintiff's Motion ("HML Dec.")

---

[1]    Plaintiff's Second Amended Complaint herein after referred to as the "Complaint".

3

The 1967 Registration set forth the year in which creation of the work was completed as 2000 and the date of first publication as July 1, 2000. See 1967 Registration, Complaint, Exhibit D.

On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings, upon a United States Copyright Office Form CA, and contrary the 1717 Registration and Plaintiff's counsel's earlier representations, Plaintiff admitted that Pattern #1717 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from "Jolanda" Kramm upon Plaintiff's "acceptance of the design". See Declaration of Matthew Kaplan ("Kaplan Dec.") Ex. C.

Yolanda Kramm ("Kramm"), upon whose Declaration Plaintiff, in part, moves, was not set forth in Plaintiff's Rule 26 (a)(1)(a)(i) Disclosures. See HML Dec. Exhibit B.

On or about April 16th, 2008, upon signature of Plaintiff's counsel in these proceedings, and upon a United States Copyright Office Form CA,  Plaintiff admitted that Pattern # 1967 was a) based on a pre-existing work (Pattern 1717); and b) (contrary Plaintiff's earlier representations to the Copyright Office and  the Court) was not a "work made for hire". See Kaplan Dec. Ex. C.

On or about September 29th, 2005, seven years after the creation of Pattern 1717, Kramm executed an unsworn Acknowledgement of Rights ("Kramm Acknowledgement") setting forth the "purchase" of the copyright and "my sketch" by [Paris Lace Inc. ("Paris")]. Exhibit A to Kramm Declaration.

The Kramm Acknowledgement sets forth that the purchased sketch was *commissioned* (but not created) on or about September 15th, 1998.

4

The Kramm Acknowledgement concludes that [Plaintiff] is the owner of the copyright in the "attached sketch which is *initialed* by me" (italics supplied). The Kramm sets forth no express words of assignment or transfer.

The Kramm Acknowledgement does not identify by pattern number the pattern subject of the Acknowledgement, and, on the face of the Kramm Acknowledgement, and in the absence of the attached initialed sketch, there is no means to identify the sketch to which Kramm refers.

The copy of the Kramm Acknowledgement produced by Plaintiff prior to Plaintiff's Motion did not have the "initialed sketch" attached to it. See Exhibit C to HML Dec.

On or about March 3, 2008, counsel to Plaintiff in these proceedings wrote to Kramm with seven questions (the "Kramm Inquiry"). See HML Dec. Exhibit D.

A copy of Kramm's response (the "Kramm Response") is also annexed to HML Dec. as Exhibit D.

In response to the Kramm Inquiry question as to the "originality" of the "sketch" attached to the Kramm Inquiry, Kramm responded, "As I remember, this sketch is original".

In response to the Kramm Inquiry as to the date the "sketch" was created, Kramm responded, "I don't have the date or year when the sketch was created."

In response to the Kramm Inquiry as to payment for the "sketch", Kramm confirmed that she was paid by Linfalls Knitting Mills Ltd. ("Linfalls").

5

In response to the Kramm Inquiry as to her memory as to, "anything else regarding the creation of the sketch", Kramm responded, "I don't remember anything special".

In response to the Kramm Inquiry, "The acknowledgement refers to you initialing a copy of the sketch. Do you recall doing so? *We have not been able to find an original initialed copy of the sketch.*" Kramm responded, "The initials are not mine. I always sign JK".

John Irwin ("Irwin") is President of Plaintiff and testified at deposition on March 6th, 2008. See HML Dec. Exhibit E, Irwin at page 6.

As at March 6th, 2008, Irwin never saw the "sketch" with Kramm's initials. Irwin at 32.

Irrespective of the Kramm Response (and irrespective of Plaintiff's failure to name Kramm on, inter alia, Plaintiff's Initial Disclosures),  Plaintiff now submits the Kramm Declaration, which without explanation or clarification, declares and affirms that the lace designs for "Linfalls' client" were "original".

Kramm's Declaration at paragraph 4 affirms and declares that after being "commissioned" to design a lace design for "Linfalls client", "I have since found out that Linfalls' client was [Plaintiff]".

Irrespective of the Kramm Response, and without explanation or clarification, Kramm declares and affirms at paragraph 6 of the Kramm Declaration that a "sketch enclosed as court exhibit B and *that bear my initials* [italics supplied] are copies of the "sketch" designed for Linfalls' client."

6

The "initialed" sketch attached to the Kramm Declaration was not produced by Plaintiff prior to the filing and service of the Motion on April 17th, 2008, even though the "initialed sketch" was available to Plaintiff no later than April 3, 2008. See April 3, 2008 e mail Matthew Kaplan, Esq. to Kramm enclosing "your declaration with exhibits for review and signature". (HML Dec. Exhibit F).

*Neither Plaintiff nor Kramm provide any explanation as to the source of the initialed "sketch" attached to the Kramm Declaration, which such previously unavailable sketch purports to be the "sketch" upon which Plaintiff's Pattern 1717 and Pattern 1967 copyright claims arise.*

Kramm's Declaration at paragraph 5 affirms and declares, "I learned from [Rolf Mueller] [of Linfalls] that the first design ...was selected", but Mueller is deceased. See HML Dec. Exhibit G, Joseph Dickenson ("Dickenson") Transcript at page 50. No explanation is given as to when Kramm so learned.

Linfalls itself is a defunct New Jersey corporation and has been so since September 2004 (HML Dec. Exhibit G at page 43-44).

Kramm's Declaration affirms and declares an assignment and transfer to "Linfalls' client" (paragraph 8) "at the moment that my design was accepted by Linfalls' client" but *a)* no written assignment or transfer is attached to the Kramm Declaration or in the record before the Court, and no such written assignment or transfer is referred to in the Kramm Response; and *b) no explanation is given as to how such an "at the moment" assignment to Plaintiff took place when, as Kramm declares and affirms at paragraph 4 of the Kramm Declaration, Kramm only subsequently (without supplying a date) found out who the Linfalls' "client" was.*

Kramm's Declaration further contradicts Kramm's earlier Acknowledgement of Rights in that the Kramm Acknowledgement of Rights sets forth a purchase of the "copyright and sketch" by Paris whereas the later Declaration makes no mention of Paris at all, and declares and affirms that that purchase was by Linfalls' for a "client" whom Kramm later "found out" was Plaintiff.

On or about September 20th, 2005, Dickenson, as Chief Executive Officer of Paris Lace, Inc., executed an unsworn Acknowledgement of Rights, wherein Dickenson, set forth that, in connection with [Pattern] 1967, Linfalls paid Kramm (see HML Dec. Exhibit H). The Dickenson Acknowledgement of Rights makes no reference to Pattern 1717 from which Pattern 1967 was derived.

The Dickenson Acknowledgement of Rights "declares" Plaintiff the owner of [Pattern] 1967 copyright but does not confirm that such transfer took place.

Dickenson was deposed pursuant to Subpoena on February 5th 2008. See HML Dec. Exhibit G.

Dickenson admitted that Dickenson had no relationship with Kramm. Dickenson at page 49;

Dickenson admitted that Kramm "is not a person that I ever worked with". Dickenson at 95.

On or about September 20th, 2005, Oswin Fischbach ("Fischbach"), then and now of Deltex Mills, Inc., but formerly with Linfalls, executed an unsworn Acknowledgement of Rights, wherein Fischbach, set forth, in connection with [Pattern] 1967, that Linfalls paid Kramm (see HML Dec. Exhibit I). The Fischbach Acknowledgement of Rights makes no reference to Pattern 1717 from which Pattern 1967 was derived.

8

Fischbach, upon whose Declaration Plaintiff, in part, moves, was not set forth in Plaintiff's Rule 26 (a) (1) (a) (i) Disclosures (See HML Dec. Exhibit B).

Fischbach admits at paragraph 7 of the Fischbach Declaration that Linfalls contracted with Kramm.

The Fischbach Declaration avers that it was "expected" that Kramm would "assign" the copyrights to Plaintiff, but does not confirm that such an assignment took place.

The Fischbach Declaration also avers,"…to the extent Linfalls obtained any rights…Linfalls assigned and transferred any and all such rights to Malibu when Malibu accepted Ms. Kramm's Design" (Fischbach Declaration at paragraph 7).

No written assignment or transfer from Linfalls to Plaintiff is in the record before the Court.

Fischbach's Declaration, which refers to an assignment and transfer of rights from Linfalls to Plaintiff,  contradicts Plaintiff's April 16th, 2008 United States Copyright Office Form CA filings with respect to the same pattern because Plaintiff's April 16th 2008 United States Copyright Office Form CA filings, claim title passed to Plaintiff, not from Linfalls, but from Kramm.

To the extent the Fischbach Declaration, confirms an assignment from Linfalls to Plaintiff, Fischbach's Declaration contradicts the Kramm Declaration which sets forth that Kramm, and not Linfalls' "assigned and transferred" the property rights to Plaintiff.

Fischbach's Declaration sets forth that, "…it was *expected* [italics supplied] that [Kramm] would assign and transfer …ownership", but no written assignment or transfer from Kramm to Linfalls or Plaintiff is in the record before the Court.

9

Dickenson admitted at Dickenson's February 5th, 2008 deposition that Pattern 1717 was knit as early as September 4th, 1998. See Dickenson at page 137, referring to, *inter alia*, a Linfalls' knitting record bearing Bates Stamp number Paris 53 (HML Dec. Exhibit J).

Dickenson admitted at Dickenson's February 5th, 2008 deposition, "…but the reality of it is that 99 percent of every lace pattern is a floral pattern."  See Dickenson at page 67.

Dickenson "admitted" that the Linfalls' knitting date of September 4th, 1998 was prior to the September 15th "commission" date set forth in the Kramm Acknowledgement of Rights. HML Dec. Exhibit G, at 137.

Linfalls could not have knit Pattern 1717 before Kramm created it, and Dickenson admitted, *inter alia*, that, "We've got dates wrong here." (See HML Dec. Exhibit G, at 138).

**B.**     **The Metritek Patterns**

On or about August 31st, 2006, Plaintiff registered Pattern #2351, as a "work made for hire" (the "2351 Registration") (Complaint, Exhibit F).

The 2351 Registration set forth the year in which creation of the work was completed as 2002 and the date of first publication as November 12, 2002.

On or about November 20th, 2004, Plaintiff registered Pattern #1307, as a "work made for hire" (the "1307 Registration") (Complaint, Exhibit H).

The 1307 Registration set forth the year in which creation of the work was completed as 1992 and the date of first publication as May 1, 1992

10

On or about August 31st, 2006, Plaintiff registered Pattern 2433 as a "work made for hire" (the 2433 Registration") (Complaint, Exhibit K).

The 2433 Registration set forth the year in which creation of the work was completed as 2003 and the date of first publication as May 15th, 2003.

On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings , upon United States Copyright Office Form CA, and contrary to said counsel's earlier representations , Plaintiff admitted that Pattern #1307 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from Metritek, Ltd. n/k/a Metritek, LLLP  upon Plaintiff's "acceptance of the lace design".  See Kaplan Dec. Ex. C.

On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings, upon United States Copyright Office Form CA, and contrary the Pattern 2351 Registration and Plaintiff's counsel's earlier representations, Plaintiff admitted that Pattern 2351 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from Metritek, LLLP upon Plaintiff's "acceptance of the lace design".  See Kaplan Dec. Ex. C.

On or about April 16th, 2008 (the day prior to the filing of Plaintiff's Motion), upon signature of Plaintiff's counsel in these proceedings , upon United States Copyright Office Form CA, and contrary to the Pattern 2433 Registration and Plaintiff's counsel's earlier representations , Plaintiff admitted that Pattern #2433 was not a "work made for hire" and set forth, inter alia, a claim of ownership through "transfer" from , Metritek, LLLP  upon Plaintiff's "acceptance of the lace design".  See Kaplan Dec. Ex. C. The said Form CA further set forth that Pattern 2433 was derived from Pattern 1307.

11

On October 22, 2007, approximately six months after this Action was commenced, Plaintiff and Metritek, LLP [sic] executed a letter agreement with respect to Pattern 2351 purporting to confirm an agreement "to work together" on Pattern 2351 which Plaintiff "commissioned" from Metritek in June 2002.  See HML Dec. Exhibit K.

The October 22, 2007 letter agreement was written by Plaintiff's counsel. See page 69 of deposition transcript of Plaintiff by Richard Samuels ("Samuels") (HML Ex. Exhibit L). Samuels signed the October 22, 2007 letter agreement for Plaintiff.

The October 22, 2007 letter agreement further set forth, "…and to the extent that the Works are determined not to be works made for hire, Metritek hereby irrevocably …assigns… copyright rights…to [Plaintiff]".

Samuels admitted that he never had a conversation with Robert Jablin ("Jablin") regarding the assignments referred to in the October 22, 2007 letter agreement.  See HML Dec. Exhibit L; Samuels at 76

On January 28th, 2008, Plaintiff and Metritek, LLLP executed two letter agreements, one with respect to Pattern 2433, and the other with respect to Pattern 2351 (which was already the subject of the October 22, 2007 letter agreement).  See HML Dec. Exhibit K.

The January 28th, 2008 letter agreements were similar to (but not identical) to the October 22, 2007 letter agreement.

The January 28th, 2008 letter agreements purported to confirm the "terms" of prior "oral agreements" wherein Plaintiff "commissioned" Metritek to create "original" designs.

12

The January 28th, 2008 letter agreement set forth that in the event that the "works" were determined not to be works for hire, than "effective as of the Commissioned Date", Metritek assigned the copyright to Plaintiff, including the right to sue for past, present and future infringements.

The January 28th letter agreements were sworn to by Jablin for Metritek LLP.

On March 6th, 2008, Metritek LLLP and Plaintiff entered into a third agreement, titled "Master Agreement". See Kaplan Dec. Ex. B.

The March 6th, 2008 Master Agreement was signed by Samuels for Plaintiff and Jablin for Metritek.

The March 6th, 2008 Master Agreement was first produced to Defendant with the filing of Plaintiff's Motion.

The March 6th, 2008 Master Agreement recited, inter alia, a "business relationship" since 1986 wherein Metritek created lace designs "commissioned" by Plaintiff.

The March 6th, 2008 Master Agreement recites that the parties, since the inception of their business relationship, have been operating under an oral agreement "under which Metritek transfers and assigns all ownership rights, including copyrights, in the Lace Designs" to Plaintiff, immediately upon Plaintiff's approval of the Lace Designs.

Although not produced until the date of the Motion, the March 6th 2008 Master Agreement was signed on the same date as Samuels was deposed by Plaintiff.

On March 6th 2008, the same date Samuels signed the Master Agreement purporting to confirm a prior "oral agreement" Samuels (HML Dec. Exhibit L at 80-81) was asked the following questions and gave the following answers:

13

Q:    Have you ever had a discussion with Mr. Jablin concerning the ownership

of the copyright with respect to patterns knit by Metritek for Malibu?

A:    Anyone in particular or just in general?

Q:    Any conversation at all, a specific conversation about ownership of

copyrights with Mr. Jablin?

A:    No, I don't believe so, no.

Q:    How about any other representative of Metritek?

A:    No, he would be the only one.

The purported oral agreement recited in the March 6th, 2008 Master Agreement

contradicts the October 22, 2007 letter agreement, and the January 28th, 2008 letter

agreements, which provide for such transfer only if "the Work is determined not to be a

work made for hire".

The March 6th, 2008 Master Agreement omit any reference to an "agreement" that

any "works" are "work[s] for hire", which was the principal point of the earlier letter

agreements

The purported oral agreement recited in the March 6th, 2008 Master Agreement

contradicts the October 22, 2007 letter agreement, and the January 28th, 2008 letter

agreements in that the purported oral agreement recited in the March 6th, 2008 Master

Agreement provides for such transfer "in exchange for [Plaintiff's] promise to

exclusively use Metritek as its knitter...", whereas the earlier agreements set forth no

such "exchange".

Jablin is the owner of Metritek LLLP and testified at a deposition on February

19th, 2008.  See HML Dec. Exhibit M at page 6.

14

When Jablin signed the October 22, 2007 Letter Agreement, Jablin did not fully understand it. HML Dec. Exhibit M at 56.

Jablin admitted signing the October 22, 2007 letter agreement, although he didn't understand it, "To allow my customer to defend the copyrights". HML Dec. Exhibit M at 57.

Jablin testified that with respect to the pattern subject of the October 22, 2007 letter agreement, Jablin never had a discussion where the pattern was assigned to Plaintiff; "There were no conversations, because this is the way we run our company." HML Dec. Exhibit M at 59 and at 75.

Jablin's deposition testimony further contradicts the March 6th, 2008 Master Agreement recitation of a prior oral agreement as to copyright ownership.

At Jablin's deposition, Jablin did not recall an "oral agreement" with Plaintiff (as recited in the Master Agreement) wherein there was an agreement with Plaintiff as to the copyright in the designs, and, in connection with such a conversation, specifically noted, "*If* there was a conversation, it was years ago, …." (italics supplied) (HML Dec. Exhibit M at 59).

## III.    ARGUMENT

As next set forth, the facts before the Court deprive Plaintiff of both summary judgment, and the right to rely for Plaintiff's prima facie case on Plaintiff multiple copyright registrations.

Plaintiff should not be granted summary judgment, and, at trial, must be required to prove each element of Plaintiff's claims, including originality, particularly so since the

evidence before the Court is that "99 percent of every lace pattern is a floral pattern." Samuels, Exhibit L to HML Dec. at 67.

Summary judgment is mandated when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review *de novo* the district court's grant of summary judgment in favor of the Appellees. *Arica Inst., Inc. v. Palmer,* 970 F.2d 1067, 1071 (2d Cir.1992).

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

On the record and evidence before this Court, genuine material issues of fact exist as to Plaintiff's ownership of a valid copyright.

A certificate of registration from the United States Copyright Office is *prima facie* proof that the claimed copyright is valid and that the registrant is its legitimate owner; *Russ Berrie, & Co., Inc. v. Jerry Elsner Co., Inc.,* 482 F.Supp. at 984-85; 17 U.S.C. § 410(c). The presumption that arises upon presentation of a registration certificate is rebuttable; it "orders the burdens of proof." *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411, 414 (2d Cir.1985) (quoting H.Rep. No. 1476, 94th Cong., 2d Sess.

157, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5773). Presentation of a registration certificate thus relieves plaintiff of proving the many facts necessary to show ownership and validity unless the defendant, by effectively challenging them, shifts the burden of so doing to the plaintiff.

In many cases, the existence of a valid copyright can be established by the introduction into evidence of a Copyright A certificate of copyright registration, if timely obtained, "constitute(s) prima facie evidence of the validity of the copyright and of the facts stated in the certificate."17 U.S.C. § 410(c) (Copyright Act of 1976); cf. _Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,_ 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) (certificate given same effect under 1909 Copyright Act); see 3 M. Nimmer on Copyright s 12.11 (1980) ("Nimmer"). "It is clear, however, that a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed. _Durham Industries, Inc. v. Tomy Corporation_ 630 F.2d 905, 908 (2nd Cir. 1980).

Here, Plaintiff has produced conflicting accounts, documents and registrations as to the creation and ownership of the copyrights in question. Plaintiff's own properly disclosed witness impugned the very notion of "originality" with respect to floral lace patterns.

A.      **Argument Regarding the Paris Pattern**[2]

Kramm's unsworn September 29th, 2005 "Acknowledgement of Rights" concerning the Paris Pattern is not prima facie evidence of a transfer. See 17 U.S.C. §204 (b) (1) and (2).

---

[2] Patterns 1717 and Pattern 1967 are referred to as the "Paris Pattern".

17

Kramm's unsworn September 29th, 2005 "Acknowledgment of Rights" was not "issued" by a person authorized to administer oaths.

The same ineffectiveness as to proof of "transfer" applies to Dickenson's "Acknowledgement of Rights"-Dickenson's "Acknowledgement of Rights" is not sworn to, and therefore not prima facie evidence of a copyright transfer. No sworn Dickenson statement is before the Court on Plaintiff's Motion.

Nor is Kramm's unsworn September 29, 2005, "Acknowledgement of Rights" a written assignment of the Paris Pattern copyright to Plaintiff; no language of assignment or conveyance is set forth in the document. 17 U.S.C. §204 (a) sets forth, in pertinent part, "A transfer of copyright ownership...is not valid unless an instrument of conveyance or a note or memorandum of the transfer, is in writing and signed ...."

Plaintiff now presents the Court with Kramm's April 10, 2008 Declaration, notwithstanding Plaintiff's failure to name Kramm on Plaintiff's Rule 2016 (b) disclosures.

Unless Plaintiff shows that Plaintiff's failure to disclose was either justified or harmless, Kramm's Declaration should be excluded from consideration. See *Design Strategy Inc. v. Davis* 469 F. 3d 284 (2nd Cir. 2006), citing Fed. Civ. Proc. Rules 26 (a) (1) (c) and 37 (c) (1).

In any event, Kramm's September 29, 2005 "Acknowledgement of Rights" is inconsistent with Kramm's April 10, 2008 Declaration.

The earlier Acknowledgment of Rights refers to a purchase of the "copyright and sketch" by Paris for Paris' "client", "Malibu". No mention is made of Linfalls.

The later Declaration refers to a "lace design designed for *Linfalls*' client, and

omits any reference to Paris.

The later Declaration makes clear that Malibu's identity was unknown to Kramm until a later time.

The later Declaration (at paragraph 8) proclaims, "At the moment that my design was accepted by Linfalls' client, I assigned and transferred all property rights...to Linfalls' client". This Kramm statement is absent from the earlier Declaration, and impossible: Kramm could not have assigned the copyright to [Malibu] at the moment of [Malibu's] acceptance, because Kramm did not know that Malibu existed.

Plaintiff further clouds the issue by its submission of the Fischbach Declaration. Fischbach, also not named on Plaintiff's Rule 2016 (b) disclosures, professes that Linfalls too assigned the Paris Pattern copyright to Plaintiff. No such written assignment is before the Court, and if Kramm assigned the Paris Pattern copyright to Plaintiff, than Linfalls had no copyright to assign; and if Linfalls assigned the copyright to Plaintiff, than Kramm's Declaration is untrue.

Moreover, the Fischbach Declaration, as did the earlier Dickenson Acknowledgement of Rights, set forth on the part of each of Fischbach and Dickenson no more than an expectation that Kramm would transfer the copyrights to Plaintiff; neither the Fischbach nor Dickenson documents state that such a transfer by Kramm, in fact, took place.

Although Plaintiff's April 16th 2008 Form CA copyright office filing claims title through an assignment from Kramm, Plaintiff has no document evidencing such an assignment from Kramm; Kramm's Acknowledgement of Rights is ineffective proof of such an assignment and the later Kramm Declaration contradicts the earlier

19

Acknowledgement of Rights.

Irrespective of whether the Court's review of the various acknowledgements and declarations demonstrates a proper "paperwork" chain of title in the Paris Pattern copyright to Plaintiff, no ultimate conclusion of title or liability be reached on Plaintiff's Motion by reason of the unexplained, inexplicable and delayed submission of the previously missing, "initialed" Kramm "sketch", upon which Plaintiff's title in the Paris Pattern rests.

The Kramm Acknowledgement of Rights refers to an initialed "sketch" as does the later Declaration, but this "initialed" sketch was missing from the record up to the date upon which Plaintiff filed the Motion, whereupon it first appeared, beyond the scrutiny of pre-trial deposition or document discovery. The circumstances of the "initialed" sketch's belated appearance remain undisclosed, a mystery to Defendants and the Court, but, in any event a factual matter precluding summary judgment on the Paris Pattern claim.

Lastly, Exhibit J to the HML Dec. is a Linfalls knitting records marked at the Dickenson examination, apparently showing that Linfalls knit the Paris Pattern before the Kramm "sketch" was commissioned or created. Dickenson, inter alia, admitted to the impossibility of this circumstance.

**B.**     <u>**Argument Regarding the Metritek Patterns**</u>

Plaintiff's summary judgment claims fare no better in connection with the Metritek Patterns.

Again, the factual issue before the Court is not whether Metritek "acknowledges" Plaintiff's title to the copyrights, but rather whether those rights are predicated on a real

20

transaction vesting title in Plaintiff such that Plaintiff has standing and cause to assert infringement against Defendant, or a feigned transaction constructed by Plaintiff and acquiesced to by Metritek to help its customer "defend the copyrights" (See HML Dec. Exhibit M; Jablin at 57).

Standing alone, erroneous "work for hire" filings may be insufficient to invalidate an infringement claim. But here, where Plaintiff's counsel, Plaintiff and the alleged commission "agent" (Metritek) repeatedly, to the Copyright Office, the Court, and Defendant asserted title by way of a "work for hire" claim, withdrawn only the day before the filing of the summary judgment motion, surely the substituted title claim by way of "assignment" bears closer scrutiny.

Plaintiff plotted its own course in the three letter agreements dated from October 2007 to January 2008, the earliest inconsistent with the later, but each providing, inter alia, that an "assignment" would be deemed to have occurred only if it was "determined" that the works were not "works for hire".

These three contracts between Plaintiff and Malibu thus set the earliest date for the "assignment" of the copyrights out of Metritek to Plaintiff as April 16th, 2008, when Plaintiff "corrected" its "work for hire filings", and asserted for the first time Plaintiff's unilateral "determination" that, because the works were not "works for hire" (despite prior repeated protestations), Plaintiff would proceed on the pure "assignment" theory Plaintiff's own contracts and writings had previously rejected.

Three separate letter agreements, two sworn to before Plaintiff's counsel, prepared by Plaintiff's counsel well into this copyright litigation, maintained the "work for hire" claim.

21

That claim's withdrawal the day prior to the motion filing, with the subsequent unannounced publication of the so called "Master Agreement" impugn the existence of the very "oral" assignment "confirmed" by Metritek and Plaintiff in the Master Agreement.

If such an "oral" assignment ever occurred, and assuming the innocent mischaracterization of Plaintiff's title as through the "work for hire" doctrine on the copyright registrations, how is it not a factual issue that such mischaracterization was further repeated in the three letter agreements (two under oath) prepared by Plaintiff's counsel during the course of the litigation, and Plaintiff's counsel's own correspondence to this Court (HML Dec. Exhibit A; Kaplan letter to Court dated January 18th, 2008)?

The repetitive insistence on a "work for hire" claim with such claim's withdrawal the day prior to the motion filing suggest that there was never an underlying agreement assigning the subject copyrights from Metritek to Plaintiff.

The absence of such an agreement at any time is further substantiated by deposition testimony before the Court.

On March 6th 2008, the same date Samuels signed the Master Agreement purporting to confirm a prior "oral agreement" Samuels (at Samuels at 80-81; Ex. O to HML Dec.) was asked the following questions and gave the following answers:

Q:    Have you ever had a discussion with Mr. Jablin concerning the ownership of the copyright with respect to patterns knit by Metritek for Malibu?

A:    Anyone in particular or just in general?

22

Q:    Any conversation at all, a specific conversation about ownership of

copyrights with Mr. Jablin?

A:    No, I don't believe so, no.

Q:    How about any other representative of Metritek?

A:    No, he would be the only one.

In the absence of such a "conversation", there could not have been an "oral"

assignment.

With the withdrawal of the "work for hire claim" it is a given that Plaintiff had no

title upon which to assert the Metritek pattern derived copyright infringement claims

against Plaintiff.

Plaintiff's oral "assignment" claim is further undermined by Jablin's testimony

for Metritek that "*if*" such an oral assignment took place, it took place long ago. Coupled

with Samuels's testimony that he had no conversations concerning ownership of the

copyright claims with Jablin or anyone at Metritek (even though he signed the earliest of

the letter agreements and the Master Agreement), it is evident that the "oral" assignment

claim is a fabrication, conjured in recognition of Plaintiff's invalid "work for hire"

registrations.

Custom and usage are insufficient to vest title in Plaintiff. *Effects Associates, Inc.*

*v. Cohen*, C.A. 9 (Cal) 1990, 908 F.2d 555, certiorari denied 111 S. Ct. 1003, 498 U.S.

1103. Accordingly, Plaintiff's reliance on such custom and usage in support of title are of

no merit.

23

IV.    **CONCLUSION**

WHEREFORE, the above Defendants respectfully requests that Plaintiff's Motion for an Order granting partial summary judgment on the grounds that there are no genuine issues of material fact as to Plaintiff's claim of liability for copyright infringement against Defendants, pursuant to Federal Rules of Civil Procedure 56, be denied.

Dated:  May 7, 2008
     New York, New York

                  **LAZARUS & LAZARUS, P.C.**
                  *Attorneys for Defendants*

       By: _____

                  **HARLAN M. LAZARUS, ESQ. (**HML-0268)
                  240 Madison Avenue, 8th Floor
                  New York, New York 10016
                  (212) 889-7400

*TO*:    **COWAN, DEBAETS, ABRAHAMS & SHEPPARD, LLP**
       41 Madison Avenue, 34th Floor
       New York, New York 10010
       **Attention: MATTHEW KAPLAN & NANCY WOLFF**

# INDEX OF EXHIBITS TO DECLARATION OF HARLAN M. LAZARUS, ESQ. IN OPPOSITION TO THE MOTION

**EXHIBIT A:**    January 18, 2008 letter from Plaintiff's counsel to the Court.

**EXHIBIT B:**    Plaintiff's Rule 26(a)(1)(a)(i) Disclosures

**EXHIBIT C:**    Jolanda Kramm Acknowledgment

**EXHIBIT D:**    March 3, 2008 "Kramm Inquiry" and Kramm Response

**EXHIBIT E:**    Deposition Transcript of John Irwin

**EXHIBIT F:**    April 3, 3008 e-mail from Plaintiff's counsel to Kramm enclosing the Kramm Declaration for signature

**EXHIBIT G:**    Deposition Transcript of Joseph Dickenson

**EXHIBIT H:**    Dickenson Acknowledgment, dated September 20, 2005

**EXHIBIT I:**    Oswin Fischbach Acknowledgment, dated September 20, 2005

**EXHIBIT J:**    Linfalls knitting record; Bates stamped document Paris 53

**EXHIBIT K:**    *(i)* October 22, 2007 Metritek, LLP letter agreement; *(ii)* January 28, 2008 Metritek, LLP letter agreement regarding Pattern 2433; *(iii)* January 28, 2008 Metritek, LLP letter agreements regarding Pattern 2351

**EXHIBIT L:**    Deposition Transcript of Richard Samuels

**EXHIBIT M:**    Deposition Transcript of Robert Jablin