UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIBU TEXTILES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAROL ANDERSON, INC. and CABI, LLC, <br><br> Defendants. | Docket No. 07-cv-4780 (SAS) |

---

**PLAINTIFF MALIBU TEXTILES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY FOR COPYRIGHT INFRINGEMENT**

---

COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP

Nancy E. Wolff
Matthew A. Kaplan
41 Madison Avenue, 34th Floor
New York, New York 10010
(212) 974-7474

*Attorneys for Plaintiff Malibu Textiles, Inc.*

{A062053.DOC\2}

## INTRODUCTION

As argued in Plaintiff Malibu Textiles, Inc.'s opening brief, there are no genuine issues of material fact regarding Defendants Carol Anderson, Inc. and CABI, LLC's liability for copyright infringement. Defendants have admitted access, substantial similarity and actual copying,[1] leaving only the question of Malibu's ownership rights in its Copyrighted Lace Patterns to be determined by the Court.

On the remaining question, Defendants' opposition fails to bring forward any evidence placing Malibu's ownership rights in dispute. Instead, Defendants desperately attempt to misdirect and confuse the Court by alleging non-material "inconsistencies" and "contradictions" in or between the documents that confirm Malibu properly owns the copyrights in each of the copyrighted lace designs. Moreover, Defendants present nothing to overcome the undisputed fact that the creators of the Copyrighted Lace Designs all confirm that Malibu owns the copyrighted lace designs at issue, and Defendants cite no cases contradicting the settled Second Circuit law that frowns upon the very tactic Defendants seek to use here. Partial summary judgment as to liability should be granted.

### I. DEFENDANTS HAVE NOT REBUTTED PLAINTIFF'S OWNERSHIP RIGHTS IN ITS COPYRIGHTED LACE PATTERNS

As expected, Defendants focus their opposition on trying to challenge the *prima facie* presumption of ownership based upon Plaintiff's copyright registrations. In doing so, Defendants bear the burden of proving that Malibu is not the owner of the copyright. *Hamil Am.,*

---

[1] Indeed, Petra Farquhar admits in her deposition that Defendants "attempted to change the design of [Malibu's Third Design] so as to avoid a further infringement allegation." Farquhar Decl., ¶ 7.

*Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000). As explained below, Defendants wholly fail to meet their burden.

### A. Defendants Ignore Settled Second Circuit Law That is Squarely Against Their Position.

Initially, it must be emphasized that Defendants do not (and cannot) contest the long-settled Second Circuit law that precludes a third party infringer from attacking the validity of a copyright assignment where there is no dispute between the creator of the work and person or entity claiming ownership. *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982); *Caravan, Ltd. v. Karin Stevens, Inc.*, 2001 WL 1426698, at *1-2 (S.D.N.Y. Nov. 14, 2001) ("the purpose of section 204(a), after all, is to protect copyright owners from persons mistakenly or fraudulently claiming that a copyright was transferred orally, **not to enable third parties to infringe on transferred copyrights whenever there is no formal writing effecting the transfer**.") (emphasis added) Here, Defendants admit that neither Yolanda Kramm, Oswin Fischbach, Paris Lace, Inc. nor Metritek LLLP dispute Malibu's ownership of the copyright in each of the Copyrighted Lace Designs. *See* Defendants' Statement Pursuant to Local Rule 56.1, ¶¶ 11-15. Because it is undisputed that there is no disagreement between Malibu and the parties from whom Malibu obtained its rights, Defendants' attack should be rejected on this basis alone.

Moreover, Defendants do not (and cannot) counter the settled Second Circuit law that the Section 204(a) writing requirement is satisfied by the copyright owner's later execution of a writing, even after litigation has commenced, which confirms the prior agreement. *See Eden Toys*, 697 F.2d at 36; *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, 1998 WL 603225, *2-3 (S.D.N.Y. Sept. 11, 1998).

2

{A062053.DOC\2}

Lastly, Defendants do not (and cannot) dispute the settled Second Circuit law regarding the effect of innocent errors in copyright applications. The Second Circuit has clearly held that "only the **knowing failure** to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action ...." *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) (quotation omitted) (emphasis added). Here, Defendants cite no law or evidence in the record establishing that Malibu knowingly failed to advise the Copyright Office of facts regarding the manner in which it obtained its rights in the Copyrighted Lace Designs, let alone any law proving that the Copyright Office would have rejected Malibu's applications based upon any alleged error. Likewise, Defendants present no evidence proving that Malibu intended to defraud the Copyright Office or the individuals or entities from whom Malibu obtained its rights in the Copyrighted Lace Designs.

**B. Any Alleged "Inconsistencies" and "Contradictions" Regarding the First Design Relate to Non-Material Issues And Should Not Preclude Summary Judgment Against Defendants.**

Any alleged discrepancies in the manner in which Malibu obtained its rights in the First Design are immaterial and should not preclude summary judgment. First, Defendants incorrectly read the Section 204 writing requirement, asserting that the Copyright Act requires that the note or memorandum of a transfer must be sworn. However, 17 U.S.C. § 204(a) merely provides: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." Nowhere does

3

Section 204(a) require that the writing be sworn - all that is required is a note, memorandum or other document "signed" by the owner of the rights.[2]

Second, the Kramm and Fischbach Declarations are consistent with their prior signed Acknowledgements of Rights in that the documents confirm that Malibu is the owner of the copyright in the First Design and Defendants present no evidence to dispute this fact. Moreover, the Kramm and Fischbach Acknowledgement of Rights are consistent with Joseph Dickenson's Acknowledgement of Rights, which he was questioned about during his deposition and the contents of which he confirmed under oath.

Third, the alleged contradiction regarding the commission date as compared to a Paris Lace knitting record is wholly irrelevant to the question of Malibu's ownership. At best, Defendants complain about a mere nine day difference, notwithstanding the fact that Kramm's Acknowledgement states that she was commissioned to create the design "on or about September 15, 1998", which by its very terms means that Kramm estimated the date. However, even if there is a discrepancy regarding the commission date, it does not create a genuine issue of material fact regarding Malibu's ownership of the First Design. *See Kenbrook Fabrics, Inc. v. Holland Fabrics, Inc.*, 602 F. Supp. 151, 153 (S.D.N.Y. 1984) (rejecting defendants' challenge to validity of registration where evidence established that the stated date of first publication was approximately three to four weeks off).

In short, Defendants failed to present any evidence establishing that there is a genuine issue of material fact that Malibu is the owner of the copyright in the First Design.

---

[2] Thus, the Kramm and Fischbach Declarations are writings sufficient to confirm the prior transfers. *See A. Brod, Inc. v. SK&I Co., LLC*, 998 F. Supp. 314, 324 (S.D.N.Y. 1998) (written declaration created for litigation confirming prior agreement sufficient to satisfy Section 204(a) writing requirement)

### C. Any Alleged "Inconsistencies" and "Contradictions" With the Second and Third Designs Relate to Non-Material Issues And Should Not Preclude Summary Judgment Against Defendants

Defendants' alleged issues regarding how Malibu obtained its rights in the Second and Third Designs from Metritek LLLP similarly are immaterial and should not preclude a finding of summary judgment. Without any evidence to back their assertion, Defendants surmise that Metritek's grant of rights in the Second and Third Designs to Malibu is "a feigned transaction constructed by Plaintiff and acquiesced to by Metritek to help its customer 'defend the copyrights.'" Defs. Opp. Brf., p.21. However, Defendants' supposition, without evidence, is insufficient to defeat summary judgment.

Defendants claim that there is an issue of material fact because there were numerous separate agreements confirming Metritek's transfer of rights in the Second and Third Designs to Malibu. However, the agreements are all consistent because in each Metritek confirms that Malibu is the owner of the Second and Third Designs and confirms in the Master Agreement that Malibu is the owner of <u>all</u> lace designs created by Metritek for Malibu. It does not matter whether Malibu received its rights as a "work for hire" or by assignment – Metritek confirms that it transferred its rights to Malibu.[3]

Moreover, Defendants' citation to Mr. Samuel's deposition testimony for the proposition that there was never any oral agreement between Metritek and Malibu is disingenuous. Contrary to Defendants' assertion, Mr. Jabelin never denied having had a

---

[3] Indeed, agreements that provide that a work is transferred as a work for hire and, alternately by an assignment if it is later determined that the work is not a work for hire are standard agreements that have been upheld by the court. *See Zyware, Inc. v. Middlegate, Inc.*, 1997 WL 685336, at *3-4 (S.D.N.Y. Nov. 4, 1997) (upholding transfer agreement that provided in the first instance that that works were works for hire, but alternatively: "to the extent that such materials, under applicable law, may not be considered works made for hire, [plaintiff] hereby assigns to [defendant] the ownership of all copyrights in such materials...")

5

discussion with a Malibu representative regarding the assignment of rights, he merely said that such a discussion would have "occurred years ago, **because this is the agreement I have with every customer.**" *See* Lazarus Decl., Ex. M [59:11-13].

Defendants also attempt to characterize Plaintiff's filing of supplemental copyright applications for each of the copyright registrations at issue as an admission that the original registrations are somehow "improper and would not withstand the scrutiny of this Court." Defs. Opp. Brf., p. 2. Plaintiff has done nothing wrong in filing supplemental registrations. In *Jamison Bus. Sys., Inc. v. Unique Software Support Corp.*, 2005 WL 1262095, at * (E.D.N.Y. May 26, 2005), the court refused to dismiss an action based upon a technical error in the author's name of the author in plaintiff's copyright registration because "this mistake could be easily corrected through the filing of a supplementary copyright registration." Indeed, 17 U.S.C. § 408(d) provides for the filing of an application for supplementary registration to correct an errors in copyright registrations and further explains that the "information contained in a supplementary registration augments but does not supersede that [information] contained in the earlier registration." *Id.* Thus, the original registrations that claim the lace designs were works for hire are not expunged or cancelled from the Copyright Office's records.

Finally, the sole case cited by Defendants for the proposition that "custom and usage are insufficient to vest title in Plaintiff," *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990), *cert. denied sub nom.*, *Danforth v. Cohen*, 498 U.S. 1103 (1991), is readily distinguishable. That case involved a dispute between plaintiff, a special effects creator, and defendant, the writer/director/executive producer of a movie. To avoid paying plaintiff in full for footage created for the movie, defendant asserted that plaintiff licensed the copyright in the footage to him, despite the fact that there was no writing to memorialize the license. *Id.* at 556.

The Ninth Circuit found defendant could not rely upon the custom and practice of the movie industry to avoid the Section 204 writing requirement. *Id.* at 558. However, because that case involved a direct ownership dispute between a copyright owner and a licensee, is it distinguishable from this action, which involves a third party infringer trying to avoid liability by attacking an assignment about which there is no disagreement as to ownership. Summary judgment therefore is appropriate.

## II. DEFENDANTS PRESENT NO EVIDENCE TO DISPUTE THE ORIGINALITY OF PLAINTIFF'S COPYRIGHTED LACE PATTERNS.

Defendants also half-heartedly assert that Plaintiff should not be afforded the *prima facie* presumption of originality. Defs. Opp. Br., p. 3. The sole basis for their argument is an off-hand comment by the owner of one of Malibu's knitters, Joe Dickenson, during his deposition that: "99 percent of every lace pattern is a floral pattern." Defs. Opp. Br. p. 16.[4] Even if it is true that "99 percent" of lace patterns are floral patterns (and Defendants present no other evidence to support the statement), this does not mean that a particular floral lace design is not original. Defendants bring forward no case law or evidence to place the originality of Malibu's Copyrighted Lace Designs into question.

Under the Copyright Act, "originality" means something different from its ordinary usage. In *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991), the Supreme Court discussed the degree of originality required to sustain a claim for copyright protection:

> Original as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal

---

[4] In their opposition brief, Defendants misattribute the quote to Richard Samuels, one of Malibu's owners.

> degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Id.* (citations and quotation marks omitted); *see also Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) ("[T]he quantity of originality that need be shown is modest-only a dash of it will do.")

Here, Defendants present no evidence to disprove that any of the Copyrighted Lace Designs at issue were independently created and that the designs were sufficiently creative for protection. Defendants also cannot overcome the fact that the Copyright Office accepted Malibu's applications, in effect finding that the lace designs were sufficiently original to permit the applications to go to registration. By way of further example, Defendants present no evidence to contradict Ms. Kramm sworn declaration that she created two original lace designs for Malibu. Kramm Decl., ¶ 5. Defendants' argument should be rejected and Malibu should be entitled to its *prima facie* presumption of originality by virtue of its copyright registrations.

### III. DEFENDANTS' REQUEST TO EXCLUDE PLAINTIFF'S EVIDENCE ON THE BASIS THAT IT WAS NOT DISCLOSED IS FACTUALLY AND LEGALLY BASELESS.

Without any law or evidence on their side to defeat Malibu's motion, Defendants ultimately resort to alleging procedural issues with Malibu's filings and request that the Court exclude Plaintiff's evidence. Specifically, Defendants claim that Plaintiff failed to name Yolanda Kramm and Oswin Fischbach in its Rule 26 Disclosures and that Plaintiff did not produce certain documents during discovery. Defendants' assertions are meritless.

8

### A. Plaintiffs Had No Obligation Under Rule 26 to Amend Its Disclosures to Name Individuals That Defendants Already Knew About

Fed. R. Civ. P. 26(e) plainly explains that a party's disclosures must be supplemented: "if the party learns that in some material respect the information disclosures is incomplete or incorrect **and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.**" (emphasis added). Here, no supplementation was necessary because Defendants were well aware of Kramm and Fischbach from the discovery process.

Defendants knew about Kramm since at least as early as November 2007 from Malibu's first document production. In fact, the first two documents disclose Kramm's name. Kaplan Supp. Decl., Ex. A. Moreover, at the January 22, 2008 pre-motion conference, Mr. Lazarus specifically identifies Kramm, asserting: "I am entitled to discovery on the facts pertaining to both the creation of the pattern and this chain from Yolanda [Kramm] to Paris to Malibu." *Id.*, Ex. A [12:19-21]. On January 25, 2008, Plaintiff supplemented its document production and produced the Kramm and Fischbach Acknowledgements. *Id.*, Ex. A. Finally, Mr. Lazarus questioned Mr. Dickenson regarding Kramm and Fischbach during his deposition. *See* Lazarus Decl., Ex. G [50:11-12; 134:18-21]. Defendants were well aware that Kramm and Fischbach were persons with knowledge.

### B. Defendants' Complaints Regarding the "Initialed Sketch" are Baseless.

Defendants' claim that they had not received an "initialed sketch" by Yolanda Kramm prior to the filing of the motion is simply untrue. In fact, it appears that Defendants are purposely confusing the issue to somehow discredit Plaintiff.

After the March 10, 2008 Settlement Conference before Judge Pitman, Plaintiff's counsel produced copies of documents obtained from Ms. Kramm to Mr. Lazarus on March 13,

9

{A062053.DOC\2}

2008. Among the documents produced were copies of sketches of the First Design that Kramm had in her possession, including sketches of the First Design that bore her initials. Kaplan Supp. Decl., ¶¶ 12-16, Ex. B.[5] Defendants cannot dispute receiving those documents because: 1) Mr. Lazarus actually responded to the e-mail which made those documents available for download, and 2) he attached documents from that production to his own declaration as Ex. C and D.

Defendants' assertion that Plaintiff produced a document it claimed was missing is also meritless. Malibu produced Kramm's Acknowledgement of Rights as it appeared in its files. Malibu did not have a copy of the sketch that was purportedly attached to that document, and does not assert now that it has found the attachment. Plaintiff produced copies of sketches obtained both from Malibu's file and from Kramm, which she acknowledges in her Declaration are copies of the sketches she created for Malibu and which are identical to the First Design.

Therefore, Defendants' complaints that they did not receive the documents attached to the Kramm Declaration before the motion was filed are baseless.[6] The Court therefore should not preclude any of Plaintiff's evidence.

## CONCLUSION

There being no genuine issues of material fact, Plaintiff's motion for partial summary judgment on the issue of liability for copyright infringement should be granted.

---

[5] It appears Plaintiff inadvertently used a non-Bates labeled copy of the sketches as exhibits to the Kramm Declaration. However, the sketches attached are the same as what was produced to Defendants in mid-March. See Kaplan Supp. Decl., ¶ 16.

[6] Plaintiff produced the Metritek Master Agreement with the motion for summary judgment. While the agreement was executed in early March, 2008 by Plaintiff and Metritek, Plaintiff's counsel did not receive the complete document as the detailed appendix annexing hundreds of patterns was being reviewed for accuracy. Defendants cite no prejudice by not having received the document earlier. Further, the Master Agreement, which was prepared to avoid future piecemeal assignments, is consistent with not only the parties' understanding that Malibu owns all rights in all of the copyrighted lace patterns that Metritek LLLP created for Malibu, but also is consistent with Robert Jabelin's deposition testimony.

Dated:   New York, New York
         May 21, 2008

                                        COWAN DEBAETS ABRAHAMS
                                          & SHEPPARD LLP

                                        By: /s/ Nancy E. Wolff
                                            Nancy E. Wolff
                                            Matthew Kaplan

                                        41 Madison Avenue - 34th Floor
                                        New York, New York 10010
                                        Tel. (212) 974-7474
                                        Fax (212) 974-8474
                                        *Attorneys for Plaintiff Malibu Textiles, Inc.*