UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
MALIBU TEXTILES, INC.,             :

                  :

           Plaintiff,      :

                  :

      - against -      :    **OPINION AND ORDER**

                  :

CAROL ANDERSON, INC., CABI,   :    07 Civ. 4780 (SAS)
LLC, PINK VAN ENTERPRISES,   :
LLC, and CAROL ANDERSON,    :

                  :

        Defendants.   :
------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Malibu Textiles, Inc. ("Malibu"), a converter of lace, brings this action against Carol Anderson, Inc., CABI, LLC, Pink Van Enterprises, LLC, and Carol Anderson for the alleged infringement of its copyrights to certain lace designs (the "Designs"). Malibu now moves for partial summary judgment on liability against Carol Anderson, Inc. and CABI, LLC (collectively, "Defendants").[1] For the reasons that follow, Malibu's motion is granted.

---

[1]     One month following the filing of the instant motion for partial summary judgment, Malibu filed a third amended complaint to add additional defendants Pink Van Enterprises, LLC and Carol Anderson. Malibu's motion and this Opinion and Order discuss only the two original defendants – Carol Anderson, Inc. and CABI, LLC. However, because the Court holds that Malibu owns a valid copyright to the Designs, all defendants are barred from raising this issue again. The only remaining issue in this action is the amount of damages to which Malibu

## II.   BACKGROUND[2]

### A.   The Parties

Malibu is a New York corporation principally operating in this

District.[3] It conducts business as a "lace converter," purchasing undyed lace or

"greige goods" from a textile mill or knitter, dying, and then finishing the lace

according to a clothing manufacturer's specifications so that it can be incorproated

into clothing.[4]

Carol Anderson, Inc. is a Washington corporation principally

conducting business in California.[5] CABI, LLC is a California limited liability

company.[6] Defendants are engaged in the business of offering custom-designed

---

is entitled.

[2]     The following facts are undisputed and are taken from Plaintiff's
Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.
56.1"), Defendants' Statement Pursuant to Local Rule 56.1, Defendants'
Counterstatement of Additional Material Facts Creating Issues That Must be
Tried, and Plaintiff's Response to Defendants' Counterstatement. For facts that
provide background, cannot reasonably be in dispute, and are not material to these
motions, the Court draws from plaintiff's complaint and the parties' submissions
with respect to this motion.

[3]     *See* Third Amended Complaint ("Compl.") ¶ 9.

[4]     *See* Plaintiff Malibu Textile, Inc.'s Motion for Partial Summary
Judgment as to Liability for Copyright Infringement ("Pl. Mem.") at 1-2.

[5]     *See* Compl. ¶ 10.

[6]     *See id.* ¶ 11.

2

women's apparel through direct sales.[7]  Their apparel is offered for sale via their

website http://www.cabionline.com and through their contracted sales

representatives.[8]

Malibu and Defendants had a business relationship from

approximately October 2003 through 2006.[9]  During this period, Malibu sold

Defendants various styles of lace for use in their manufacture of women's

clothing.[10]  Representatives of both parties occasionally met to facilitate the

viewing and purchase by Defendants of Malibu's lace fabric samples.[11]  These

meetings occurred in or around February 2005 and July and August of 2006.[12]

Defendants eventually terminated their business relationship with Malibu and

sought other lace suppliers.[13]

### B.    The Lace Designs

#### 1.    Malibu Pattern Nos. 1717, 1967, and 2120 (collectively, the

---

[7]    *See id.* ¶ 14.

[8]    *See id.*

[9]    *See* Pl. 56.1 ¶ 17.

[10]    *See* Pl. Mem. at 4-5.

[11]    *See* Pl. 56.1 ¶ 22.

[12]    *See id.* ¶ 23.

[13]    *See* Pl. Mem. at 1.

**"First Design"**)

Malibu alleges infringement by Defendants of its copyrights to the First Design. In or around 1998, Malibu approached one of its knitters – Paris Lace, Inc. ("Paris Lace") – to create and knit a floral lace design.[14] Paris Lace did not have suitable equipment to knit the requested lace and therefore approached another knitter – Linfalls Knitting Mills, Inc. ("Linfalls") – to create the design.[15] Linfalls commissioned Jolanda Kramm, a resident of Brazil, who then created two original designs for consideration.[16] The lace design that was selected is known by Malibu as Pattern No. 1717.[17] Subsequently, Malibu made minor modifications to Pattern No. 1717 by filling in a portion of the center of a floral element.[18] The modified pattern is known by Malibu as Pattern No. 1967 or Pattern No. 2120, depending on the yarn used to manufacture the fabric.[19]

During the course of the business relationship, Defendants viewed the First Design and purchased fabric samples. Specifically, in February 2005 and

---

[14]     *See id.* at 2.

[15]     *See id.*

[16]     *See id.*

[17]     *See id.*

[18]     *See id.* at 3.

[19]     *See id.*

July 2006, Defendants purchased approximately seventeen yards of samples of the First Design.[20]

Malibu is listed as the claimant of the copyrights for Pattern Nos. 1717 and 1967. Pattern No. 1717 bears U.S. Copyright Registration number VA 923-008, effective October 20, 1998, and Pattern No. 1967 bears number VA 1-159-155, effective August 26, 2002.[21] The copyright registrations for both designs were made within five years of the date of their first publication.[22] The original copyright registrations listed the designs as "works for hire."[23]

On April 16, 2008, Malibu's counsel filed Form CAs to correct errors in the original registrations. With respect to Pattern No. 1717, Malibu corrected its registration to specify that the design was not a "work for hire" as originally designated. Rather, according to the Form CA, Kramm, the original creator, "assigned all ownership rights, including copyright, to Copyright Claimant Malibu

---

[20]    *See* Pl. 56.1 ¶ 18.

[21]    *See id.* ¶¶ 1, 3.

[22]    *See id.* ¶¶ 2, 4.

[23]    *See* 1/18/08 Letter from Matthew A. Kaplan, plaintiff's counsel, to the Court ("Kaplan Letter") at 2 ("Malibu commissioned the lace patterns as a work for hire. Thus, there are no errors in the registrations.").

[] upon Malibu['s] acceptance of the design."[24]  With respect to Pattern No. 1967,

Malibu also corrected the registration's designation of the work as a "work for

hire," now listing it as a "derivative work or compilation" based on Pattern No.

1717.[25]  Paris Lace, Linfalls, and Kramm do not dispute Malibu's ownership of the

copyright to the First Design.[26]

### 2. Malibu Pattern Nos. 2351 and 2479 (collectively, the "Second Design")

Malibu also alleges that Defendants infringed its copyright to the

Second Design.  The design known by Malibu as Pattern No. 2351 was created for

Malibu by Metritek, LLLP ("Metritek"), another of Malibu's knitters.[27]  This

design is also known as Pattern No. 2479 depending on the type of yarn used to

manufacture the lace.[28]  From February 2004 through July 2006, Defendants

---

[24]     Form CA for U.S. Copyright Registration No. VA 923-088, Ex. C to Declaration of Matthew A. Kaplan ("Kaplan Decl."), at 1-2 (stating that the "non-lawyer Copyright Claimant Malibu [] did not understand the term 'work for hire' as it is defined and interpreted under the Copyright Act when it had its authorized agent . . . prepare and file the application.  As the Copyright Claimant believed the work was created for hire, it believed it was the author.").

[25]     Form CA for U.S Copyright Registration No. VA 1-159-155, Ex. C to Kaplan Decl., at 3-4.

[26]     *See* Pl. 56.1 ¶¶ 11-13.

[27]     *See* Pl. Mem. at 3.

[28]     *See id.*

6

purchased over fourteen thousand yards of lace fabric bearing the Second Design.[29]

Malibu is listed as the copyright claimant for Pattern No. 2351, which bears U.S. Copyright Registration No. VA-1-373-475, effective August 31, 2006.[30] The copyright registration was made within five years of the design's first publication[31] and originally listed the design as a "work for hire."[32]  On April 16, 2008, Malibu's counsel filed a Form CA to correct the designation of the design from a "work for hire" to a work created by Metritek with rights transferred to Malibu.[33]  Metritek does not dispute Malibu's ownership of the copyright to the Second Design.[34]

### 3.    Malibu Pattern Nos. 1307 and 2433 (collectively, the "Third Design")

Malibu claims that Defendants have infringed its copyright to the Third Design.  The design known by Malibu as Pattern No. 1307 was also created

---

[29]    *See* Pl. 56.1 ¶ 19.

[30]    *See id.* ¶ 5.

[31]    *See id.* ¶ 6.

[32]    *See* Kaplan Letter at 2.

[33]    *See* Form CA for U.S. Copyright Registration No. VA 1-373-475, Ex. C to Kaplan Decl., at 5-6.

[34]    *See* Pl. 56.1 ¶ 14.

by Metritek for Malibu.[35]  Pattern No. 1307 was slightly modified over time and

the modified pattern became known as Pattern No. 2433.[36]  In February and

August 2005, Defendants purchased from Malibu samples of the Third Design

totaling thirteen yards of fabric.[37]

Malibu is listed as the copyright claimant for Pattern No. 1307, which

bears U.S. Copyright Registration No. VA 640-234, effective November 25,

1994[38] and which was filed within five years of the date of the design's first

publication.[39]  Malibu is also the claimant according to the copyright registration

for Pattern No. 2433, which bears registration number VA 1-373-476, effective

August 31, 2006.[40]  The copyright registration for Pattern No. 2433 was also made

within five years of the date of the design's first publication.[41]  Both registrations

designated the designs as "works for hire," and Malibu's counsel filed Form CAs

on April 16, 2008 to correct the designations so that they now reflect that they are

---

[35]    *See* Pl. Mem. at 4.

[36]    *See id.*

[37]    *See* Pl. 56.1 ¶ 21.

[38]    *See id.* ¶ 7.

[39]    *See id.* ¶ 8.

[40]    *See id.* ¶ 9.

[41]    *See id.* ¶ 10.

works created by Metritek with rights transferred to Malibu.[42] Metritek does not dispute Malibu's ownership of the copyright to the Third Design.[43]

## III.  APPLICABLE LAW

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[44] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[45] A fact is material when it "'might affect the outcome of the

---

[42]  *See* Form CA for U.S. Copyright Registration No. VA 640-234, Ex. C to Kaplan Decl., at 7-8. *See also* Form CA for U.S. Copyright Registration No. VA 1-373-476, Ex. C to Kaplan Decl., at 8-9 (further correcting the registration to indicate that the work is derivative of Pattern No. 1307).

[43]  *See id.* ¶ 15.

[44]  Fed. R. Civ. P. 56(c).

[45]  *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

suit under the governing law.'"[46] "It is the movant's burden to show that no genuine factual dispute exists."[47]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[48] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[49] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[50]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving

---

[46] *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[47] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[48] *Higazy*, 505 F.3d at 169 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[49] *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[50] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

party and draw all justifiable inferences in that party's favor.[51]  However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[52]  Summary judgment is therefore

inappropriate "'if there is any evidence in the record that could reasonably support

a jury's verdict for the non-moving party.'"[53]

## B.    Copyright Infringement

"Copyright protection subsists . . . in original works of authorship

fixed in any tangible medium of expression . . . from which they can be perceived,

reproduced, or otherwise communicated . . . ."[54]  To prevail on a claim of

copyright infringement under the Copyright Act of 1976,[55] a plaintiff must

---

[51]     *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d
450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305,
312 (2d Cir. 1997)).

[52]     *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[53]     *American Home Assurance Co. v. Hapag Lloyd Container Linie,
GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v.
Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

[54]     17 U.S.C. § 102(a).

[55]     *Id.* § 101 *et seq.*

11

establish "(1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original."[56]

### 1.    Ownership of a Valid Copyright

The validity of a copyright depends upon its originality.[57]  The Supreme Court has made clear that originality in this context "does not signify novelty" and indeed, "a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."[58] Rather, originality, as used in this context, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."[59]  This level of creativity is "extremely low," with "the vast majority of works mak[ing] the grade quite easily" as long as they possess "some creative spark, no matter how crude, humble or obvious."[60]

---

[56]    *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[57]    *See Yurman Design, Inc. v. PAJ, Inc. ("PAJ, Inc.")*, 262 F.3d 101, 109 (2d Cir. 2001) (citing *Feist*, 499 U.S. at 345-47; U.S. Const. art. I, § 8, cl. 8).

[58]    *Feist*, 499 U.S. at 345.

[59]    *Id.* (citation omitted).

[60]    *Id.* (quotation marks omitted).

In addition, "[c]opyright law may protect a combination of elements that are unoriginal in themselves."[61] This Court has previously observed that "in cases involving design, [] it is difficult to discern when a combination of unoriginal component parts is itself original so as to merit copyright protection."[62]

Where a plaintiff holds a certificate of copyright registration made before or within five years of the first publication of a work, the certificate constitutes prima facie evidence of the first element – *i.e.*, "the validity of the copyright and of the facts stated in the certificate."[63] Thus, the certificate of registration raises a rebuttable presumption that the work in question is copyrightable,[64] as well as original.[65] Although a copyright registration issued more than five years after the first publication of a work is not entitled to the

---

[61]    *PAJ, Inc.*, 262 F.3d at 109.

[62]    *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d 525, 529 (S.D.N.Y. 2000).

[63]    17 U.S.C. § 410(c).

[64]    *See M. Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194, 2007 WL 2728711, at *3 (S.D.N.Y. Sept. 19, 2007) (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)).

[65]    *See Yurman Design, Inc. v. Golden Treasure Imps., Inc. ("Golden Treasure")*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)).

13

statutory presumption of validity, a court may accord it such evidentiary weight as it sees fit.[66]

A plaintiff's "proffer of its certificate of copyright registration thus shifts to [the defendant] the burden of proving the invalidity of the copyright [] and there the burden rests, unless the presumptions are rebutted."[67]  The presumption of validity may be rebutted by "other evidence in the record [that] casts doubt on the question."[68]  This includes evidence that the work at issue has been copied from the public domain, or that the work is a non-copyrightable utilitarian article.[69]

### a.    Works Made for Hire

Under the Copyright Act, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."[70]

---

[66]    *See* 17 U.S.C. § 410(c).

[67]    *Fonar*, 105 F.3d at 104 (citation omitted).

[68]    *Id.* (citation omitted).

[69]    *See id.* (citations omitted).

[70]    17 U.S.C. § 201(b).

"Work made for hire" is defined as "a work prepared by an employee within the

scope of his or her employment."[71]

The Supreme Court has enunciated factors that courts are to consider

when determining whether a party is an employee whose works are "for hire," or

alternatively, an independent contractor who owns the copyright to the work in the

absence of any assignments.[72] According to the Second Circuit, the following

factors are "of particular importance and will almost always be significant:"

> (1) the hiring party's right to control the manner and means of
> creation; (2) the skill required [of the hired person]; (3) the
> provision of employee benefits; (4) the tax treatment of the hired
> party; (5) whether the hiring party has the right to assign
> additional projects to the hired party.[73]

### b.    Transfer of Copyright Ownership

The Copyright Act defines the transfer of copyright ownership as the

"assignment, mortgage, exclusive license, or any other conveyance, alienation, or

hypothecation of a copyright or of any of the exclusive rights comprised in a

---

[71]    *Id.* § 101.

[72]    *See Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106,
110 (2d Cir. 1998) (citing *Community for Creative Non-Violence v. Reid*, 490 U.S.
730, 751-52 (1989)) ("The Supreme Court held in *Reid* that common law agency
principles govern ownership of the copyright under the work-for-hire doctrine.").

[73]    *Id.* at 111 (citing *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992)).

copyright."[74]  Transfer is invalid, however, "other than by operation of law . . .

unless an instrument of conveyance, or a note or memorandum of the transfer, is in

writing and signed by the owner of the rights conveyed."[75]  "The Copyright Act

does not equate transfer of the tangible form of a copyrighted work with transfer

of ownership over the copyright, absent an agreement."[76]

        The Second Circuit has made clear and courts have since found that

the "note or memorandum of the transfer" under 17 U.S.C. § 204(a) ("section

204(a)") "need not be made at the time when the license [or assignment] is

initiated; the requirement is satisfied by the copyright owner's later execution of a

writing which confirms the agreement."[77]  Even a writing made after the

commencement of litigation can satisfy section 204(a).[78]  Moreover, the Second

Circuit has stated that section 204(a)'s purpose is "to protect copyright holders

from persons mistakenly and fraudulently claiming oral licenses" and as a result,

---

[74]     17 U.S.C. § 101.

[75]     *Id.* § 204(a).

[76]     *Lighthouse Solutions, LLC v. Connected Energy Corp.*, No. 03-CV-6275, 2004 WL 1811391, at *4 (W.D.N.Y. Aug. 13, 2004).

[77]     *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982), *superseded on other grounds by* Fed. R. Civ. P. 52(a). *Accord Arthur A. Kaplan Co. v. Panaria Int'l, Inc.*, No. 96 Civ. 7973, 1998 WL 603225, at *2 (S.D.N.Y. Sept. 11, 1998).

[78]     *See Kaplan*, 1998 WL 603225, at *2 (citation omitted).

16

where the "copyright holder appears to have no dispute with its licensee [or assignee] on this matter, it would be anomalous to permit a third party infringer to invoke this provision against the licensee [or assignee]."[79]

### 2.    Copying by Defendants

To satisfy the second element of an infringement claim, "a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"[80] "The distinction between 'actual copying' and 'improper or unlawful appropriation' reflects the fact that 'not all copying results in copyright infringement . . . .'"[81]

Because direct evidence is seldom available to prove "actual copying," a plaintiff may fulfill this requirement with indirect evidence, "including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony."[82] "There is an inverse relationship between

---

[79]    *Eden Toys*, 697 F.2d at 36.

[80]    *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

[81]    *Bauer v. Yellen*, No. 06 Civ. 15287, 2008 WL 1849158, at *4 (S.D.N.Y. Apr. 22, 2008) (quoting *Boisson*, 273 F.3d at 267).

[82]    *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992) (quotation marks and citations omitted).

17

access and probative similarity such that 'the stronger the proof of similarity, the less the proof of access is required.'"[83] "It is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was improper or unlawful by showing that the second work bears 'substantial similarity' to protected expression in the earlier work."[84]

## IV. DISCUSSION

Malibu moves for partial summary judgment as to Defendants' liability for copyright infringement of the Designs. Defendants do not dispute that they had access to the Designs, nor do they dispute that the lace patterns used in their allegedly infringing products are substantially similar to the Designs.[85] As such, the sole issue before the Court at this time is whether Malibu owns valid copyrights to the Designs.

Malibu contends that its certificates of registration for the Designs, which were made within five years of their first publication, constitute prima facie

---

[83]   *Jorgensen*, 351 F.3d at 56 (quoting 3 *Nimmer on Copyright* § 13.03[D], at 13-77).

[84]   *Castle Rock Entm't*, 150 F.3d at 137 (quotations omitted).

[85]   *See* Pl. 56.1 ¶¶ 16, 31. *Accord* 1/22/08 Pre-Motion Court Conference at 3:16-20 (Defendants' counsel: "In the first instance . . . with respect to all three patterns at issue, I agree with the notion of substantial similarity and access. So that is not a discovery issue and it is not going to be a litigated issue.").

evidence of the validity of the copyrights.[86]  Malibu concedes that it mistakenly

listed itself as the author of "works for hire" on the original registrations, but

argues the mistakes were innocent and therefore do not rebut their entitlement to a

presumption of validity.  Moreover, according to Malibu, even if errors were made

in the copyright registrations such that Malibu is not the author of the Designs but

rather the assignee of the copyrights, Defendants' attacks fail because the

assignors/creators – *i.e.*, Paris Lace, Kramm, Linfalls, and Metritek – do not

dispute Malibu's ownership of the copyrights.

Defendants premise their opposition on a few grounds:  *first*, they

argue that Malibu now relies on the "fiction" that it acquired the copyrights to the

Designs by assignment even though it had previously argued that their designation

as "works for hire" was accurate.[87]  According to Defendants, Malibu's "repetitive

insistence on a 'work for hire' claim with such claim's withdrawal the day prior to

the motion filing suggest[s]" or raises a genuine issue of material fact as to

---

[86]     *See* Pl. Mem. at 8.

[87]     Defendants Carol Anderson, Inc. & CABI, LLC[] Memorandum of
Law in Opposition to Plaintiff's Motion for Summary Judgment as to Liability for
Copyright Infringement ("Def. Opp.") at 1-2.

whether there ever was an "underlying agreement assigning the subject copyrights from [the creators] to [Malibu]."[88]

*Second*, Defendants argue that even if Malibu obtained the copyrights via assignment, that assignment did not occur until April 16, 2008 – the date on which Malibu filed Form CAs to correct its registrations – which is after the alleged infringements.[89]  According to Defendants, there is no evidence of a prior oral or written agreement transferring the copyrights to Malibu before the alleged infringements occurred, and they reject Malibu's contention that such explicit agreement was unnecessary because industry practice provided for the automatic transfer of rights upon Malibu's approval of the design.[90]  *Third*, Defendants argue that summary judgment should not be granted where there are issues of material fact as to whether the Designs are original.[91]

As an initial matter, Defendants do not claim that Malibu fraudulently designated the Designs as "works made for hire" when it filed the copyright

---

[88]    *Id.* at 22.

[89]    *See id.* at 21.

[90]    *See* Pl. Mem. at 11. *See also* Def. Opp. at 2.

[91]    *See* Def. Opp. at 3 ("At trial, Plaintiff should be compelled to prove each element of Plaintiff's copyright infringement claim, including the 'originality' of the generic floral lace patterns subject of the registrations.").

registrations. However, the record is clear and Malibu does not dispute that the

copyright registrations originally listed the Designs as "works for hire," and

Malibu took the position that the designation was correct up until it made the

instant motion. Indeed, as Defendants point out, Malibu entered into two separate

agreements with Metritek – dated October 22, 2007 and January 22, 2008 – stating

that the Designs were "works for hire."[92]

"Only the knowing failure to advise the Copyright Office of facts

which might have occasioned a rejection of the application constitute[s] a reason

for holding the registration invalid and thus incapable of supporting an

infringement action."[93] "Where the misrepresentation can be construed as

inadvertent, innocent or unintentional, it is insufficient to rebut the presumption of

validity."[94] Here, there is no indication that Malibu's mis-designation of the

---

[92]     *See* 10/22/07 Letter Agreement between Richard Samuels, Malibu,
and Robert Jablin, Metritek ("10/22/07 Metritek Letter Agreement"), Ex. K to
Declaration of Harlan M. Lazarus in Opposition to Plaintiff's Motion for Partial
Summary Judgment.

[93]     *Sunham Home Fashions, LLC v. Pem-America, Inc.*, No. 02 Civ.
6284, 2002 WL 31834477, at *5 (S.D.N.Y. Dec. 17, 2002) (citing *Eckes v. Card
Prices Updated*, 736 F.2d 859, 861-62 (2d Cir. 1984)), *aff'd sub nom. Pem-America, Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 7707, 2003 WL
22964908 (2d Cir. 2003).

[94]     *Id.* (citing *Lida v. Texollini, Inc.*, 768 F. Supp. 439, 442 (S.D.N.Y.
1991)).

21

Designs as "works for hire" in its copyright registrations constituted a knowing

misrepresentation made to mislead the Copyright Office "to approve an

application it otherwise believed might be rejected."[95] The remaining question

then is whether Malibu owns the copyrights to the Designs.

The contrast between Malibu's previous insistence that the Designs

were properly designated as "works for hire" and its recent abandonment of that

theory is odd and perhaps indicative of poor lawyering. However, it does not

create a genuine issue of material fact where the record shows *first*, that Malibu

now owns the copyrights to the Designs; *second*, Malibu obtained those rights at

the time it accepted the Designs; *third*, that the transfer of copyrights occurred via

---

[95]     *Id.* (granting plaintiff's motion for preliminary injunction and stating
that, in the absence of any indication that the misrepresentation was knowingly
made to mislead the Copyright Office, the "significance of the misrepresentation
alone is not grounds to find a fraud has been committed"). *Accord Lida*, 768 F.
Supp. at 442 (determining plaintiffs's mis-designation of its work on the copyright
registration application to be innocent where defendant "adduced no evidence that
[plaintiff] was engaged in fraudulent conduct by these errors" and it is "not
outlandish to think that [plaintiff] considered itself the originator of the copyright
design since it purchased rights which are attendant to that status").

Even assuming, arguendo, that Malibu committed a fraud on the
Copyright Office, the "import of such a finding would be to shift the burden of
proving validity of the copyright[s] back" to Malibu, which must then demonstrate
that the Designs are original and copyrightable. *Sunham*, 2002 WL 31834477, at
*5. While floral lace designs may be generic in general, upon review of the
Designs, the Court finds as a matter of law that they are original and copyrightable
according to the standard set forth by the Supreme Court in *Feist* and its progeny.

informal agreements between Malibu and its knitters; *fourth*, that those informal

agreements pre-dated Defendants' alleged infringement; *fifth*, that those informal

agreements have since been reduced to writing;[96] and *sixth*, of the parties that

might conceivably have held the copyrights (instead of Malibu) at the time of

infringement, none dispute that Malibu was and is the owner of the copyrights.

Because section 204(a) is satisfied even where a writing to confirm an

earlier informal agreement to transfer the copyrights is made at a later date, the

crucial question is whether such an earlier agreement existed. The evidence

demonstrates that all of the relevant parties – Malibu, Kramm, Paris Lace, and

Metritek – not only agree that Malibu owns the copyrights but also, that Malibu

obtained ownership at the time it accepted the Designs pursuant to informal and

implied agreements that are standard in the industry.[97] Where these parties

---

[96]    *See, e.g.*, 3/6/08 Master Agreement Between Metritek and Malibu
("3/6/08 Metritek Master Agreement"), Ex. B to Kaplan Decl., at 8-9.

[97]    *See, e.g.*, Declaration of Oswin Fischbach, former co-owner of
Linfalls, ¶ 6 ("As is industry practice, at the moment Malibu accepted Ms.
Kramm's design, it was expected that Ms. Kramm would assign and transfer to
Malibu any ownership rights that she had in that lace design, including but not
limited to any copyright rights . . . ."); 2/5/08 Transcript of Deposition Testimony
of Joseph Dickinson, Paris Lace, Inc., Ex. A to Kaplan Decl., at 101:6-11
(Witness: "And it is a way of doing business. You have sketches made, and the
moment you purchase that sketch, that is now your property. That is and always
has been a way of doing business."); 2/19/08 Transcript of Deposition Testimony
of Robert Jablin ("Jablin Dep."), Metritek, Ex. B to Kaplan Decl., at 59:1-7
(Witness: "There were no conversations, because this is the way we run our

23

"appear to have no dispute with [Malibu] on this matter, it would be anomalous to permit a third party infringer to invoke this provision" against Malibu.[98]

Moreover, Defendants have pointed to no evidence that rebuts the general consensus established by the testimony. Rather, Defendants make much of the fact that Malibu has changed its theory of ownership over the copyrights during the course of the litigation, contending that this requires a jury to make fact findings at trial. Defendants seem to contend that because Malibu has previously maintained that the Designs were works for hire that it owned outright, then there could not have been any informal understanding that assignment of the copyrights occurred at the moment Malibu accepted and commissioned the Designs, as it now contends.[99]

---

company . . . What we design for our customers is done on an exclusive basis, and upon giving us the order for the sketch . . . they have the right to copyright the design, as long as we get all the knitting on the pattern."); Jablin Dep. at 61:2-9 (Defendants' counsel: "And if you don't? . . . Is it a problem with the copyright or is it a problem with the customer?" Witness: "With the customer." Defendants' counsel: "Because the copyright is given away?" Witness: "That's correct."); Declaration of Jolanda Kramm ¶ 8.

[98]    *Eden Toys*, 697 F.2d at 36.

[99]    *See* Def. Opp. at 21-22.

It is true that the Court may not make credibility determinations at the

summary judgment stage.[100] As a result, the Court cannot determine at this stage

whether, for example, Malibu and Metritek are more credible now as they contend

that the copyrights to the Second and Third Designs were transferred to Malibu

when Malibu commissioned the Designs, or earlier this year when they advanced

the position that the Designs were "works for hire."[101] However, the consistent

thread that runs through both positions is the undisputed fact that all of the

---

[100]    *See Jeffreys*, 426 F.3d at 554-55 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (citations omitted).

[101]    *Compare* 3/6/08 Metritek Master Agreement ("This agreement confirms the oral agreement under which Metritek and Malibu have been operating since the inception of Metritek and Malibu's business relationship in or around 1986 regarding the creation and ownership of Lace Designs created by Metritek for Malibu . . . ." *with* 10/22/07 Metritek Letter Agreement ("Metritek and [Malibu] agree that the Works are works made for hire for [Malibu] . . . ."). Notably, paragraph two of the Metritek Letter Agreement goes on to state that "to the extent that the Works are determined not to be works made for hire, Metritek *hereby* irrevocably and perpetually assigns and transfers ownership of all rights, including but not limited to copyright rights . . . ." (emphasis added). Malibu argues that there is no inconsistency between these two agreements because the Metritek Letter Agreement provides for assignment of the copyrights to Malibu in the alternative. *See* Plaintiff Malibu Textile, Inc.'s Reply Memorandum in Support of its Motion for Partial Summary Judgment as to Liability for Copyright Infringement at 5 n.3. I disagree. The language in the Metritek Letter Agreement only provides for assignment, in the alternative, as of the date of the Agreement – *i.e.*, October 22, 2007 – rather than as of 1986 and is therefore not particularly supportive of Malibu's theory that all of the agreements are, by their terms, consistent with each other.

25

relevant parties – specifically, the parties who, in the absence of an agreement with Malibu, would be the legitimate copyright holders – uniformly agree that Malibu owned the copyrights prior to Defendants' activities and continues to own them, and they have now reduced that understanding to writing. Defendants have offered no evidence to cast any doubt on these facts.

"Courts have repeatedly held that where a putative transferor and transferee of a copyright agree that the transfer was valid, an alleged infringer may not use the writing requirement as a sword to avoid liability."[102] While the exact legal origin and designation of Malibu's ownership was presumably unclear to Malibu and its knitters until quite recently (despite the participation of counsel during the past year, at least), these parties have consistently and unwaveringly maintained the position that Malibu is the owner and the proper plaintiff. In light of that and for the foregoing reasons, I conclude that Malibu owns a valid copyright and its motion for partial summary judgment is granted.

## V.    CONCLUSION

For the reasons set forth above, plaintiff's motion for partial summary judgment as to liability for copyright infringement is granted. The Clerk of the

---

[102]     *Caravan, Ltd. v. Karin Stevens, Inc.*, No. 00 Civ. 7664, 2001 WL 1426698, at *1 (S.D.N.Y. Nov. 14, 2001) (citations omitted).

Court is directed to close the motion [document no. 30]. A conference is

scheduled for July 30, 2008, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 7, 2008

27

## - Appearances -

**For Plaintiff**:

Matthew A. Kaplan, Esq.
Nancy E. Wolff, Esq.
Cowan, DeBaets, Abraham & Sheppard LLP
41 Madison Ave., 34th Floor
New York, NY 10010
(212) 974-7474
Fax:  (212) 974-8474

**For Defendants**:

Harlan M. Lazarus, Esq.
Lazarus & Lazarus, P.C.
240 Madison Ave.
New York, NY 10016
(212) 889-7400
Fax:  (212) 684-0314